### EMILY A. CAMPBELL *v.* WILLIAM HENRY et al.

VENDOR'S LIEN — AGREEMENT TO SELL TO ONE AND DEED TO ANOTHER, BY WAY OF GIFT OR ADVANCEMENT, LIEN ARISES. — If the negotiation of purchase and agreement to sell be with one person, but the deed, at his instance, be made to another, by way of gift or advancement, the person to whom the title is made will be regarded as a volunteer, taking the estate without consideration, and the lien will arise.

2. SAME—NO LIEN WHERE NOTE OF THIRD PERSON IS TAKEN FOR THE PUR-
CHASE-MONEY.—Where the negotiations and conveyance are to one, and the
obligation of a third person is taken for the purchase-money, the vendor's lien
does not arise.

3. CHANCERY COURTS—PLEADINGS—AMENDED BILL—CASE IN JUDGMENT.—
Where the original bill showed that the land on which a vendor's lien was
sought to be enforced was conveyed in 1853 by H. and wife, two of the com-
plainants, to S., the other complainant, who sold to C., one of the defendants,
an amended bill which was exhibited by H. and wife, without joining S., to
whom they had conveyed, is demurrable and should be dismissed.

APPEAL from the chancery court of Tippah county.
VANCE, J.

The facts of this case are fully stated in the opinion of the
court.

*John W. Thompson*, for appellant,

Filed an elaborate argument discussing all the questions
involved in the case. It is too long for insertion and the
reporter is unwilling to attempt to abridge it lest he destroy
its completeness.

*George L. Potter*, on the same side,

Also filed an elaborate argument, which is omitted for
the same reason.

No counsel for appellees.

SIMRALL, J. :

William Henry and Sarah, his wife, and John Stevenson
brought this suit in chancery, claiming a lien on a tract of
land which had been conveyed by them to Mrs. Emily
Campbell for a balance of the purchase-money. The bill
states that Henry, being in debt more than he could con-
veniently pay without a sale of property, did, in 1853,
convey the land in controversy, with some personal prop-
erty, to John Stevenson, the brother of Mrs. Henry, on the
agreement that he would pay all the debts then owing by
Henry ; Henry however, to retain possession. That, in order
to pay off such of said debts as had not then been satisfied,

and to raise means for providing another homestead for Henry and family, on or about the 14th June, 1860, Stevenson sold the land to Golightly for $1,150, part of which was paid in cash and the promissory note for the balance of $450 was taken, payable to said Henry on the 1st of November thereafter. This note or bill single was dated the 18th of June, but, at the special instance and request of Golightly, the deed was made to Emily A. Campbell, the sister of Golightly. Mrs. Campbell demurred to the bill, which was overruled.

The separate answers of Golightly and Mrs. Campbell assert, in positive terms, that the entire amount of the purchase-money was paid in cash, and deny that the note or bill single had any connection with the land. Golightly's answer exhibits that he then had pecuniary means and good credit; that his brother-in-law, Campbell, had been murdered by robbers, leaving his wife with a family of small children dependent and unprovided for; that for the purpose of securing her a home and means of support, he bought from the complainants the land, and that his sister might be entirely unembarrassed in her title, paid the price down in cash; that a few days after this purchase, he bought for her, oxen, pigs, sheep, poultry, a lot of wheat, and the growing crop of corn and cotton, then on the premises, on a credit, and that the note for $450 was given for this property. Mrs. Campbell, with less detail, states in her answer the same facts.

An amended bill was filed by Henry and wife, charging that the true price for which the land was sold was $1,500, but that by inadvertence and mistake the sum named in the deed was $1,150, of which sum there remained due of the principal $450, evidenced by the note. The prayer was that the deed to Mrs. Campbell might be reformed and corrected and the lien enforced. To this bill there was also a demurrer, which was overruled. Exceptions were taken by the defendants to the depositions of Foote and Stewart. The record does not contain any separate order, sustaining or

overruling them, but the final decree recites that the exceptions were sustained. The exceptions go to the relevancy and competency of the evidence.

There was also a *pro confesso* on the amended bill for want of an answer.

The final decree reformed the deed, established the lien and ordered a sale of the land.

Conceding the note for $450 to have been for part of the price of the land, a doubt might be raised whether a lien existed. Golightly, for the purpose of making provision for his sister and her family, negotiated the purchase for her, and became responsible for the money. If Mrs. Campbell is to be regarded as the real purchaser, the conveyance being made to her, the lien does not arise, because she is not responsible for the debt. If the negotiation had been directly between the complainants and Mrs. Campbell, they agreeing to sell and convey to her, taking the obligation of Golightly for the deferred payment, a lien would not result, for that would be the acceptance of a collateral security for the purchase-money, which would be a waiver of it.

The principle, however, is well supported by authority, that if the negotiation of purchase and agreement to sell be with one person, but the deed be, at his instance, made to another, by way of gift or advancement, the person to whom the title is made will be regarded as a volunteer, taking the estate without consideration, and the lien will arise, as where the contract of sale was made with the husband, and his obligation for the money taken, but the deed was made to his wife. 6 Smedes & Marsh. 296. Also, where the father, upon the marriage of his daughter, put her in possession of land, as an advancement, and she and her husband contracted to sell the land, but the father made the deed. Here the daughter was the substantial vendor, and she and her husband could assert the lien. See Davis v. Pierce et al., MSS. opinion.

Within the reason of this rule, Mrs. Campbell might be considered a volunteer, paying no consideration, incurring

no personal responsibility ; but accepting the estate with
all the equities upon it ; as if it had been conveyed directly
to Golightly ; who, as to the complainants, was the real pur-
chaser.

The demurrer to the amended bill ought to have been
sustained. The original bill disclosed that the land had
been conveyed in 1853, by Henry and wife to Stevenson.
It was Stevenson's joinder in the deed to Mrs. Campbell
that transferred the title. In any proceeding to reform and
correct a mistake in this deed, he was a necessary party.
But the amended bill, seeking to rectify the deed, was filed
by Henry and wife as complainants. The final decree is
predicated in part on the amended bill, granting all the
additional relief which it craves.

But waiving that, and applying the testimony to the issues
made by the pleadings, does the evidence overcome the
answers, wherein they deny that Golightly's obligation was
given for the land? The deed to Mrs. Campbell recites that
the consideration had been paid. It was once much debated,
whether such recital was not conclusive, and an estoppel on
the grantor to deny, or disprove. In England such is its
effect. Willis, 9 ; 2 Taunt. 141 ; 5 Barn. and Ald. 606 ; 2
ib. 544. Here, and in most of the states, it is placed among
the exceptions to the general rule ; having only the force of
*prima facie* evidence, but open to be disproved. It is
important evidence, in the nature of a contemporary admis-
sion by the vendor and vendee. The answers affirm that
the note of Golightly was given for sundry articles, on the
premises bought for Mrs. Campbell, after the land purchase
had been consummated. The witnesses, Foote and Steven-
son, say that these articles, or some of them, were obtained
from Henry. The deed and acknowledgment bear date the
fourteenth of June, the note bears date the eighteenth of
June. Ordinarily, the note, if connected with the land,
would bear even date with the deed as part of the same tran-
saction. Its subsequent date, coupled with the fact that
other things were got from Henry, strongly corroborates the

answers.  The only countervailing testimony is that of two witnesses, who depose in substance, that in 1860, they heard Golightly say that he owed a balance of $400 or $450 on the land.  They speak of oral declarations made ten years before the time that they testified.  Much allowance ought to be made for the treachery and infirmity of the memory.

It is common observation and experience, that a statement or admission made in regard to a past transaction is to be valued as evidence against the party according to the circumstances under which it is made.  If made deliberately and as a narrative of the occurrences and events, then it is of weight, especially if it comes from trustworthy, intelligent witnesses, capable of making a clear statement.  A casual remark thrown out in conversation does not have this character.  It would appear that one or both these witnesses were creditors of Henry, and, perhaps, were inquiring about the chances of realizing something through Golightly, and in that connection he spoke of his indebtedness to Henry without special reference to the trade or consideration out of which the debt arose.  The observations of Professor Greenleaf (Ev., vol. I, § 200), with respect to verbal admissions, have great force:  "It ought to be received with great caution."  "The party may not have clearly expressed his meaning."  "The witness may have misunderstood him."  "By a misapprehension of some part of the expressions used, an effect may be given to the statement at variance with the party's meaning."  See Brown v. Gilliam, 43 Miss. 641.

The only testimony in the record tending to establish the mistake in the deed, that the consideration for the land was $1,500, instead of $1,150, as recited therein, are these admissions of Golightly.  It is very worthy of note, that the original bill sworn to by Henry states the price of the land at $1,150, as set out in the deed, and that $700 had been paid, leaving $450 as represented by Golightly's note.  Not until the depositions of these witnesses had been taken, raising the price of the land to $1,500, from the admissions

of Golightly, and the other property as thrown in, was Henry's memory refreshed so as to bring back the forgotten circumstance that there was a mistake in the deed.

In view of all the circumstances, we are brought to the conclusion that the complainants have not made out a case entitling them to relief.

Wherefore, the decree of the chancellor is reversed.