## LAUGHLIN *v.* MITCHELL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI.

Argued April 11, 1887. — Decided April 25, 1887.

In June, 1846, a sale took place, at public auction, under a deed of trust, of land in Mississippi, the property of M., the husband of the plaintiff, and on which they lived. The plaintiff's father bought the land at the sale. His daughter and her husband continued to live on it. The husband died in 1847, and in 1848 she married L., and they continued to live on the land. In 1858, she and L. and her father executed an instrument, by which her father leased the land to her for her life, in consideration of natural love and affection and $100, and which acknowledged that the sole legal and equitable title and the right of property in and to the land were in her father. Five months afterwards, she and her husband duly acknowledged the execution of the lease, and recorded it in the proper office. In 1869, her father made his will, devising the land to her for her life, and to a grandson, in fee, after her death; and died in 1870. In 1881, she brought this suit in equity against the grandson, to cancel the lease and set aside the devise to the grandson, on the ground that her father bought the land under a parol trust for her, and that her signature to the lease was obtained by duress: *Held*, that she was estopped from setting up the parol trust, and that no ground was shown for setting aside the lease.

In equity. Decree dismissing the bill, from which the complainants appealed. The case is stated in the opinion of the court.

*Mr. Murray F. Smith* for appellant. *Mr. Alfred B. Pittman* filed a brief for same.

*Mr. Albert M. Lea* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a bill in equity filed on the 25th of June, 1881, in the Circuit Court of the United States for the Southern District of Mississippi, by Florida Laughlin, the wife of Edmund C. Laughlin, against Joseph D. Mitchell, and also against Jeffer-

son Davis and Joseph H. D. Bowmar, as executors of the last will and testament of Joseph E. Davis, deceased.

The allegations of the bill are substantially as follows: The plaintiff is the owner and in possession of a plantation in Warren County, Mississippi, known as "Diamond Bend." She is a daughter of Joseph E. Davis, deceased. The defendant Mitchell is the grandson of Davis. Davis died in 1870, leaving a last will and testament, which was duly admitted to probate, in the proper court, in September, 1870. The will was executed on the 18th of March, 1869. Its second and third articles were as follows: "2d. I give and devise to my daughter, Florida Laughlin, the estate known as the Diamond Place, in said county of Warren, containing about one thousand two hundred acres, for and during her natural life, with full enjoyment of the profits and privileges thereunto belonging. 3dly. I give and devise to my grandson, Joseph D. Mitchell, the plantation known as the Diamond Place, in the county of Warren, containing about one thousand two hundred acres, now in possession of and occupied by my said daughter, Florida Laughlin, who has a life estate therein, with appurtenances thereunto belonging, on the death of my said daughter, Florida Laughlin, to hold and enjoy the same in fee simple; but in case my grandson, J. D. Mitchell, should not survive my daughter, Florida Laughlin, and should die without issue, I give and devise said Diamond Place to my nephew, Joseph E. Davis, son of Hugh R. Davis, of Wilkinson County, Mississippi." Davis became possessed of the property in question only through the plaintiff and as her trustee, under the following circumstances: On the 7th of June, 1844, the plaintiff was the wife of David McCaleb, and she and her husband were then living on the plantation, which had been his property before he married her. There existed a deed of trust of the property, given by McCaleb in 1837, the balance of the debt secured by which, amounting to $13,955.80, had been assigned to one Jacobs. In June, 1844, the plaintiff and her husband executed a new deed of trust to Chilton and Searles, as trustees, to secure the payment of said balance to Jacobs, covering the land and sundry slaves and personal

property. In May, 1846, the plaintiff and her husband exe-
cuted another deed of trust, covering the same real and per-
sonal property, and some additional slaves, to one McElrath,
as trustee, to secure a debt due by the husband to Laughlin,
Searles & Co., the debt amounting to $4201.61 of principal.
In addition, McCaleb owed other large, pressing debts. The
property was then reasonably worth more than $100,000.
Chilton and Searles advertised the property for sale under
their deed of trust, at public outcry, on the 15th of June,
1846. Before that day, Jonathan McCaleb, the uncle of
David McCaleb, had promised to purchase the property at the
sale, to take the title to it in his own name, and to give to
David McCaleb time to repay to his uncle such amount as he
should advance to make the purchase. Accordingly, the uncle
attended the sale, prepared to purchase the property, in trust,
for the benefit of his nephew. The plaintiff's father had,
however, in the mean time, at her solicitation, consented to
purchase the property in trust for her, and to hold it so that
she and her husband might in time be able to redeem it, the ob-
ject being to make it secure from the creditors of her husband.
On the day of the sale, her father and her husband's uncle being
present, it was agreed that the purchase should be made by and
in the name of her father, to be held for and sold to her on pay-
ment of such sum, with interest, as her father might be required
to pay or assume, instead of being bid in by and in the name
of her husband's uncle, to be redeemed in like manner by
her husband. It was made known at the sale, to all pres-
ent, that her father was bidding for her, and on that account
no bidding was made by any disinterested persons, and, as a
result, there was no substantial competition. All of the prop-
erty, real and personal, was knocked off to her father as the
highest bidder, at the sum of $28,531, which was scarcely
more than one-third of its value. The creditors who were en-
titled to the proceeds consented that the purchase money
should not be required to be paid in cash. The plaintiff was
left in the undisturbed possession of the property, without the
payment of any money, and her father executed his own note
to Jacobs for the principal and interest of the debt to Jacobs,

including the expenses of the sale, the intention being that her husband might be able to meet such payment by the proceeds of the crops from the property. On the 15th of June, 1846, a written agreement was executed by Chilton and Searles, as trustees, by Joseph E. Davis, and by Jacobs, which recited the sale under the deed of trust to them, and that Davis had at the sale purchased the slaves and the land for $28,531, and conveyed the property to Davis, subject to the payment of a promissory note which he then gave for the amount of the debt due to Jacobs, the title to all the property to remain in the trustees until the payment of such debt, and then to vest absolutely in Davis, Davis to pay out of the balance of the purchase money the amount due to Laughlin, Searles & Co., under the deed of trust of May 7, 1846, and the remainder of the purchase money to go to David McCaleb. After these arrangements, David McCaleb continued the cultivation of the crops and exercised dominion over the property in like manner as if the title had been vested in the plaintiff instead of in her father for her use. Her father never during the lifetime of her husband, exercised any control over the property. No account was kept or demanded as to its rents, issues and profits, and the debts which had been so assumed by her father were considered by him and her husband as her debts, to be paid for by her husband by means of the property. Her husband treated the property as her separate estate, and shipped the crops during his lifetime, and applied the proceeds to the payment of the debts which had been assumed by her father, and of the other incumbrances. David McCaleb died in May, 1847, and she shipped the crops of that year, as the crop of the preceding year had been shipped, to agents, to the credit of Diamond Place account, for the Jacobs judgment. In July, 1848, she married Edmund C. Laughlin, her present husband. They continued to live on the plantation, shipping the crops as before, and applying the same, sometimes through their merchants and sometimes by direct payment to her father, to the discharge of said indebtedness. Some years after she had married Laughlin, and after she had paid a large portion of all the incumbrances, and some other

indebtedness, she requested her father to make a title to her, and allow her to secure to him any balance for which she might be liable. This request was not complied with by him, but his failure to do so was not accompanied or explained by his advancing any claim of beneficial interest in himself in the property. Her ownership of the property was repeatedly admitted by her father, both orally, and in letters addressed to her and subscribed by him. On more than one occasion he declared to her that he had devised the property to her by his will. Before the year 1858, she had more than repaid to her father all money and debts paid out and assumed by him for her on account of the property. On the 27th of December, 1858, when her father was just beginning to recover from a dangerous illness, and while he was feeble and nervous, he said to the plaintiff, who was then in attendance upon him, that he would like her husband to be sent for (he being then at Diamond Place, several miles away). When her husband arrived, he and the plaintiff were called into the office of her father, and a paper was put into her hands, which he desired her to read aloud. When she had read it, she found it was a lease to be signed by her and her husband, and by her father, in which her father leased the Diamond Place, and the slaves so purchased by him, to the plaintiff, for life. The lease, a copy of which is annexed to the bill, was signed by the three parties. It is dated December 27, 1858, and by it Davis, in consideration of natural love and affection and $100, leases to the plaintiff the plantation called Diamond Place, and certain slaves, horses, mules, colts, cattle, sheep and hogs, for the natural life of the plaintiff. There is a covenant by the plaintiff and her husband that they will manage the plantation and slaves in a proper and husbandlike manner, and at the termination of the lease will quietly surrender the plantation and property unto Davis, his heirs, executors, administrators and assigns, " in as good condition as the same now is, natural wear and tear and unavoidable accidents excepted, it being hereby acknowledged that the sole legal and equitable title in and to said plantation and slaves and other property is in the said party of the first part, and the right of property in him."

On becoming aware of the contents of the paper she was asked to sign, the plaintiff remonstrated with her father, and reminded him that at the trustees' sale of the property he had promised her that as soon as the debt which he had assumed, or would have to assume, was paid to him, he would make her a fee simple title to the place, and she said to him that, notwithstanding all he had ever paid out on the place had been repaid to him, he now wished her to take only a life estate in what she had thus bought and paid for, to which his only reply was, " I think it best for you." She signed the paper under compulsion, seeing the nervous and excited condition of her father, and fearing disastrous consequences to him, in his feeble state of health, if she should any longer oppose him. She and her husband afterwards acknowledged the deed or lease, on the 31st of May, 1859. The acknowledgment was extorted from them by threats on the part of Davis, if they did not acknowledge it, to take possession of the place and put an overseer on it, and leave to the plaintiff the bare occupancy of the house and garden, with no other provision. From the time the plaintiff was induced by her father to make such acknowledgment up to the time of his death, she expressed to him on all proper occasions, both in letters and personal interviews, her sense of the injustice which had been done to her. From the time she left her father's house, after executing the deed or lease, she never returned to it. After she had signed the instrument she always supposed that by that act she had finally and hopelessly lost her property, and whatever she has said or done or omitted to do since was under that belief. Prior to January 25, 1869, her father suggested to her husband that he should purchase the property at the price of $60,000 for the bare land and tenements, when the market value thereof was trifling compared with their value in June, 1846, when the same lands, with the slaves, sold for over $28,000. Joseph E. Davis, the son of Hugh R. Davis, who was the devisee, under the will, of the plantation in case Joseph D. Mitchell should not survive the plaintiff and should die without issue, is dead.

Such being the allegations of the bill, its prayer is, "that

the lease or instrument in writing whereby your oratrix conveyed her said property to Joseph E. Davis, or acknowledged that the right thereof was in him, be adjudged void and of no effect as against your oratrix; that the devise of said property in and by said will to the defendant Joseph D. Mitchell be decreed to be void; that the beneficial ownership and title to said property be decreed, as against said Joseph E. Davis, deceased, and his devisees, to be in your oratrix; that an account may be taken of the payments which were made by and for your oratrix in the premises, that it may be ascertained whether or not she has, in fact, paid to said Joseph E. Davis the full amount which she was bound to pay to entitle her to the relief hereby prayed, as she has hereinbefore alleged, your oratrix being willing and hereby offering to pay any balance which may be found against her, on such accounting, to the parties entitled thereto; and that, upon the ascertainment that your oratrix has fully paid all such sums as in equity she ought to have paid, or upon her payment thereof now, she may be decreed to have the absolute, indefeasible title of said property, as against said defendant."

The answer of the defendant Mitchell puts in issue all the material allegations of the bill on which the relief it claims is founded. It denies every averment setting up any arrangement, agreement, or understanding made by Joseph E. Davis with David McCaleb, or with Jonathan McCaleb, or with the plaintiff, for the purchase of the property in trust for the plaintiff, and alleges that Joseph E. Davis purchased the property at the sale in his own right, and thereby acquired the full beneficial and legal title thereto, and that he paid the full sum which he agreed to pay by the instrument of June 15, 1846. It alleges that David McCaleb and the plaintiff at all times recognized the ownership of Joseph E. Davis in the property, and were fully cognizant of the fact that although he purchased the property to save the plaintiff from being turned out of her home, he never contemplated giving her the fee in the property, or any other interest than a life estate, and that he did not keep or demand any account of the rents, issues, and profits of the plantation, because he was content that

the plaintiff should enjoy the usufruct of the property dur-
ing her life, as appears by the lease and by the terms of his
will.   It denies that any crops were shipped for the account of
the indebtedness to Jacobs, and denies that either McCaleb or
the plaintiff ever paid to Joseph E. Davis any part of the
$28,531 which constituted the purchase money of the prop-
erty. ' It denies that the signature of the plaintiff or her hus-
band to ,the lease, or their subsequent acknowledgment of it,
was procured by the compulsion, threats, or other undue influ-
ence of her father, and alleges that the lease was intended
by him as a provision for her, and as an assurance to her of a
home for the remainder of her life.

A replication was filed to this answer and proofs were taken,
and the case was heard, an order being entered dismissing the
bill as to the executors of Joseph E. Davis.

The deposition of the plaintiff was taken as a witness in her
own behalf, and afterwards, and at the hearing, the defendant
made a motion to exclude the deposition, on the ground that
she was not a competent witness.   The court made a decree
dismissing the bill, from which the plaintiff has appealed.   In
its opinion, 14 Fed. Rep. 382, it says: " It is admitted that
the testimony of the complainant as to the understanding and
agreement between her and her father, relating to th~ creation
of the alleged trust, is incompetent, and cannot be considered."

The Circuit Court gives the following as a statement of un-
disputed facts in the case: " In the year 1846, David McCaleb,
then the husband of complainant, was the owner of the land
described in the bill, and the subject of this controversy.   He
was largely indebted, and before that time, had executed a
mortgage or trust deed to secure a debt due to one Jacobs, in"
which complainant joined, conveying to the trustees, Chilton
and Searles, this tract of land, with the slaves and personal
property thereon.   The trustees, having advertised the time
and place of sale, proceeded, on the 15th of June, 1846, to
offer the same for sale to the highest bidder for cash.   There
were present at the sale Jonathan McCaleb, an uncle of David
McCaleb, who held a large debt against his nephew, and other
creditors, or their counsel, who bid more or less for the prop-

erty sold; but the whole of it was either struck off to Joseph E. Davis, the father of complainant, or the bids were transferred to him, so that he became the purchaser, the aggregate amount of the sales being $28,531. Said Davis, so far as the creditors were concerned, continued to be the owner of the property; but David McCaleb and wife remained in possession of the property, as before the sale, up to McCaleb's death, which occurred about one year thereafter. Complainant remained in possession alone, up to her intermarriage with E. C. Laughlin, her present husband, and complainant and he have remained in possession ever since. On the 27th of December, 1858, Joseph E. Davis executed a lease or deed conveying said property, real and personal, to complainant for and during her natural life. This conveyance contained in it an acknowledgment that said Davis was the sole, legal, and equitable owner of the property conveyed. After being duly signed by said Davis, by complainant and her husband, it was delivered to complainant, and some five months thereafter it was duly acknowledged by complainant and her husband, and recorded in the proper office. Joseph E. Davis, by his last will and testament, duly probated and admitted to record, devised to the defendant, Joseph D. Mitchell, this land, described as 'Diamond Place,' then occupied by complainant, and in which, as declared by the will, she had a life estate."

As to the disputed facts in the case the court held that the trust alleged was not established by the evidence, aside from the testimony of the plaintiff, the view taken by it being, that the evidence established that Davis purchased the property with the purpose of letting the plaintiff and her husband remain on the plantation and control it, and the property upon it, intending to hold the legal title to all of it and to make himself personally responsible for the expenses of the plantation, the income to be applied to pay those expenses and the personal expenses of his daughter and her husband, and the remainder of it to the payment of the purchase money for which he was personally liable, and intending, when this was done, to convey, or secure by his will, to her, a title to the property, it not very clearly appearing whether this was to be

in fee or only for life; that, after the plaintiff's marriage to Laughlin, she and her husband desired to obtain the legal title to the property, the plaintiff all the time recognizing the title to it as being in her father, and that it was incumbered for the payment of the balance of the purchase money to whomsoever. it might be due; that this state of things continued until the execution of the lease; that the lease left the plaintiff in possession of the property for life, free from any obligation to pay any part of the debts of the place or the balance of the purchase money due; that the trust alleged was not established by clear and satisfactory evidence; that, even admitting the understanding between the plaintiff and her father at the time of the sale, as alleged in the bill, the demands referred to had not been satisfied at the time the lease was executed; that there was no fraud or deception or undue influence on the part of the plaintiff's father in respect to the execution of the lease by her or her husband; that, eight days after the execution of the lease, he gave her the option of returning it, and in that event proposed to leave her in possession of the house, garden and appurtenances, and an income, in place of the provisions of the lease; that, after waiting nearly five months and deliberating upon the proposition, and without any further influence upon the part of her father, so far as the evidence shows, and with ample time to consult counsel and friends, she and her husband, and not Mr. Davis, placed the lease on record in the proper office in Warren County, thus accepting its terms; and that they enjoyed its benefits, with no attempt to revoke it, until the filing of this bill on the 25th of June, 1881, more than twenty-two years after the execution, acknowledgment and recording of the lease, more than twelve years after Davis' will was made, and more than ten years after his death; and that it does not appear that any intimation was given to Davis, after the recording of the lease, of dissatisfaction with its terms, or that he was advised during his lifetime of any intention to assail it. The opinion of the Circuit Court says: "On the 18th day of March, 1869, Mr. Davis made his last will and testament, by which he devised the remainder interest in this real estate to the defend-

ant. Ten years thus elapsing after the lease was recorded by Mrs. Laughlin before Mr. Davis made his will, he was justified in the belief that he had the right and power to devise this remainder interest to whom he pleased, and for this reason, if there were no other, I am of opinion that complainant is estopped from assailing this lease now, and is not entitled to have the same declared void, and a cloud upon her title. She was fully cognizant of all the facts in relation to her title and in relation to the execution of the instrument, during the life-time of her father as well as since. To wait until after his death, and until after the death of most of the persons who could have had any knowledge of the transactions, and after her father, by will, had disposed of his estate, presumably, in some respects, in a manner otherwise than he would have done had he not believed himself possessed of this property, and then attack his will, would be inequitable and unjust."

On the whole case we are of opinion, that, even regarding the deposition of the plaintiff as competent testimony under § 858 of the Revised Statutes, she is estopped by her action in respect to the acknowledgment of the lease, and placing it on record, and permitting it thus to remain unquestioned for over twenty-two years, from setting up the parol trust alleged in regard to the property; that no ground is shown for setting aside the lease; and that the decree of the Circuit Court must be

*Affirmed.*