JAMES R. CORDER

*v.*

WILLIAM R. CORDER.

*Filed at Springfield March 28, 1888.*

1. RESULTING TRUST—*when it arises—degree of proof required.* A conveyance to a party may be overcome by proof of a resulting trust, by evidence showing that another than the grantee in the deed furnished and paid the purchase money. But the evidence to establish a resulting trust must be very clear, and is always received with great caution.

2. EVIDENCE—*declarations of party in his own favor.* The title or interest of a party in land in the possession of another, claiming under a conveyance, can not be established or shown by the parol declarations of the former, made when such other person is not present. Such declarations may be used against the person making them, but not in his favor, or in favor of one claiming through him.

3. SAME—*weight of declarations as evidence of title.* On bill to establish a resulting trust in land in favor of another than the one holding the legal title, the parol declarations of the latter are admissible as evidence, but such evidence ought to be received with great caution. It is subject to much imperfection, and frequently is entitled to but little weight.

APPEAL from the Circuit Court of Coles county; the Hon. C. B. SMITH, Judge, presiding.

Mr. W. H. SHINN, and Mr. W. B. LEITCH, for the appellant:

Parol evidence is competent to establish a resulting trust. 4 Kent's Com. 399; 2 Washburn on Real Prop. 482; *Morgan* v. *Clayton,* 61 Ill. 35; *Cramer* v. *Hoose,* 93 id. 503; *Smith* v. *Smith,* 85 id. 189; *Remington* v. *Campbell,* 60 id. 516; *Rann* v. *Rann,* 95 id. 438; *Low* v. *Graff,* 80 id. 360; *Collins* v. *Smith,* 18 id. 162; *Kinzie* v. *Penrose,* 2 Scam. 516.

In the absence of all rebutting circumstances, when one party furnishes the purchase money, and the deed is taken in the name of another, a resulting trust will arise in favor of the former. 1 Perry on Trusts, p. 137, sec. 126, and p. 144, sec. 132; *Beach* v. *Dyer,* 93 Ill. 295; *Marlow* v. *Marlow,* 77 id. 633; *Bruce* v. *Roney,* 18 id. 67.

Mr. HORACE S. CLARK, and Mr. CHARLES BENNETT, for the appellee:

A resulting trust is not created by any agreement.    It arises in the law upon a certain state of facts.    It results from the fact that one man's money has been invested in land, and the conveyance taken in the name of another.    *Bruce* v. *Roney*, 18 Ill. 67; *Mahoney* v. *Mahoney*, 65 id. 406.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 19th day of October, 1884, Joseph Corder died intestate, in Coles county.    He left two brothers, William R. Corder and James R. Corder, as his only heirs.    This bill was filed by William R. Corder to partition some five hundred acres of land of which Joseph Corder died seized.    James R. Corder, who was made a defendant to the bill, put in an answer, in which he admitted, substantially, all the material allegations of the bill.    He then filed a cross-bill, in which he alleged that a certain farm in Coles county, consisting of one hundred and forty acres, known as the "Pierce farm," belonged to the estate of Joseph Corder, deceased; that William R. Corder bought the land for Joseph with money furnished by Joseph for that purpose, and that William held the title in his own name, in trust for Joseph.    The cross-bill prayed that this land be partitioned between William R. and James R. Corder.    William R. Corder answered the cross-bill, and in the answer denied that Joseph furnished the money to buy the Pierce farm, or that it was bought for him, or that he had any interest whatever in it.    Replication having been filed, the cause proceeded to a hearing on the evidence, and the court entered a decree dismissing the cross-bill, to reverse which James R. Corder appealed.

The evidence in this case is quite voluminous, many witnesses having been examined on behalf of the respective parties.    Some of the evidence has but little bearing on the merits

of the case. We have, however, after carefully examining all the testimony, and after giving it such weight as it is entitled to receive, arrived at the conclusion that the decree ought to be affirmed.

William R. Corder purchased the land in his own name, on the 7th day of January, 1882, and entered into a contract, in writing, with the owners, providing for a conveyance within thirty days. On the 23d day of February following, he paid the purchase money, ($4900,) and the land was conveyed to him by David E. and Sarah Pierce. One of the grantors testified: "I sold this farm, and made the deed of it to William Corder. If Joseph was concerned in it, I did not know it." After making the purchase, William R. Corder leased the farm to Dan Crumes for the year beginning in March, 1882, by a written lease. On the 1st of March, 1883, and again on the 1st of March, 1884, William Corder leased, in writing, the principal part of the farm to George Osborn. Here is testimony, conclusive in character, which does not depend upon the recollection or veracity of witnesses, showing that William R. Corder purchased the land, and leased it as his own property, in his own name, from the time of the purchase until after the death of Joseph Corder,—three entire years. It is true, the conveyance to William R. Corder may be overcome by proof of a resulting trust, by evidence showing that Joseph Corder furnished and paid the purchase money for the land. But, as said in *Mahoney* v. *Mahoney*, 65 Ill. 406, the evidence to sustain a resulting trust must be very clear, and is always received with great caution. The object of this rule is apparent. It is to afford stability to the legal title to real estate. No witness testified that Joseph Corder furnished the purchase money which paid for the land, nor is there any direct evidence that he did furnish the money. There is evidence in the record that Joseph Corder said there were papers between him and William, to the effect that William was to convey the land back to him. But this was not competent evidence.

Joseph's title or interest in the land could not be established by his parol declarations, made when William was not present. The complainant in the cross-bill, James R. Corder, testified, that on a certain occasion he was at the residence of Joseph Corder, and was requested to write a letter for Joseph, and in looking for writing paper he found a paper folded up, with William R. Corder's name indorsed upon it. He asked Joseph what this document was, and Joseph said it was a paper he held against W. R. Corder for the Pierce land,—an agreement. But this evidence was not competent, as Joseph Corder could not, under any rule of evidence laid down in the books, establish title to the land by his own declarations. His declarations might be used against him, but not in his favor.

But it is said, Joseph Corder had the land surveyed after it was purchased; that he did labor on the farm, ditching, trimming hedge, repairing fence, trimming trees in the pasture, receiving rents, and other acts indicating ownership of the property. There was much evidence of this character introduced on the hearing, and while it was entitled to due consideration, yet it was, in the main, fully explained by testimony introduced by appellee. For example, Daniel W. Crumes, the tenant who occupied the farm in 1882, testified that he had a conversation with William and Joseph in the spring, soon after he leased the farm, in which William said: "I have hired Joseph to repair the fences, and he will fix the fence and water-gaps; and Joseph said, 'Yes, I have got a hand, and not work enough to do, and I will work him on this place fixing these fences.'" As to the surveying, the surveyor testified that he was employed by William; that Joseph was present and gave directions, but this was owing to the fact that he was interested in the adjacent land on the south, and hence claimed to know where the line actually ran. But without stopping to go over the evidence in detail, it is quite apparent, from the repeated declarations of Joseph to be found in the evidence, that the

labor he performed on the farm was not done as owner, but was done by him for William, under some arrangement made between the parties.

But it is said, that William R. Corder admitted that the land belonged to Joseph. There is the evidence of some ten or twelve witnesses in the record, to the effect that William R. Corder stated that Joseph owned the land. These declarations are, in the main, denied by appellee. But aside from this, such evidence, where the title to real estate is involved, ought to be received with great caution. As held in *Bragg* v. *Geddes*, 93 Ill. 40, such evidence is subject to much imperfection, and frequently is entitled to but little weight. But should this evidence receive that weight which appellant insists it should in the decision of the case, it is overcome by the same character of evidence introduced by appellee. Many witnesses were called by him,—some twenty-seven in all,—who, in substance, testified that Joseph Corder said the land belonged to William. The following is taken from the testimony of a part of the witnesses, as their evidence appears in the abstract:

Scoby testified: "I lived on the Pierce farm a year and eight months after William bought it. I rented a small house from Brown, who had it rented from Crumes. Joseph told me it was William's place. He said he was seeing to the place for William."

Tipton: "I said to Joseph, 'I thought you bought the Pierce farm?' He said, 'No, William has bought it.' When he was fixing the fence, I said to him, 'You are improving your land a little.' He said, 'No, I am helping Billy a little.'"

D. W. Crumes: "I lived on the Pierce farm in 1882. Leased it of William Corder. Paid rent to William Corder. Joseph said William owned the Pierce farm. William and I settled in November, 1882. Joseph was on that farm a good deal, making repairs. Joe jerked and hauled away a couple of pieces of loads of rent corn he said he had bought of Billy."

Albert Crumes: "I lived on the Pierce farm in 1882. Joseph Corder told me Billy owned that land, and had employed him to do what work was needed to be done there."

William Crumes: "Joseph told me, one time, he was over there attending to business for William. That's all I know about it."

Bridgman: "In the summer of 1882 I met Joseph Corder on the road. He said he was going to the Pierce farm. Said he had no interest in it,—that it belonged to William. That William was sick, and he was fixing the fence for him."

Brown: "I had a conversation with Joseph Corder, in which he told me William had bought one hundred and forty acres of the Pierce land."

Shaw: "I wanted to rent this Pierce land of Joseph. He said it belonged to William, and I would have to see him."

Rand: "I spoke to Joseph about renting a small house on the south end of the Pierce farm, and he said it belonged to Billy."

James Davis: "I asked Joseph about renting some oats ground. He said I must see Billy—he had nothing to do with the ground."

Cash Davis: "I saw Joseph Corder fixing a fence on the Pierce farm. He said he was fixing it for Billy."

Munson: "Joseph told me, at one time, he was doing work on the Pierce farm for his brother William."

Bud Davis: "Saw Joseph Corder cutting hedge on the Pierce farm. He rode with me up to his place. He told me he was cutting the hedge for his brother William."

Connover: "I wanted to rent the Pierce farm of Joseph. He told me to go to Billy—he had nothing to do with the renting."

As to the ditching in 1884, J. T. Tucker testified: "I live in Ash Grove, Shelby county. I helped Reynolds do this ditching on the Pierce farm. When we finished ditching on Joseph's home place, he said: 'We are going onto William's place next.' He said that farm over there (the Pierce farm,) belonged to

William, and to keep the ditching account separate.   Joseph paid for all the ditching done on both places."

From these often repeated declarations of Joseph Corder that he had no interest in the land,—that it belonged to William R. Corder,—in connection with the fact that William contracted for the land in his own name, paid the purchase money, and the conveyance was made to him, leave no ground upon which a decree might be rendered that a resulting trust has been established.

We think the decree is sustained by the evidence, and it will be affirmed.

*Decree affirmed.*