JACKSON *v.* JOHNSON.

[88 South. 410, No. 21774.]

1. WITNESSES. *Party to suit involving estate of decedent incompetent when claiming under contract with decedent.*

Where a part of the estate of a deceased person is the subject-matter of the litigation, a party to the suit is incompetent to testify to his contract with the deceased, by virtue of which contract he is claiming a part of this estate. This testimony is incompetent, though the suit is not between him who would testify and the administrator or executor of the deceased person, but extends to every assertion of such right by a party to any part of the estate left by a deceased person and claimed by such

party by reason of an alleged contract between such party and
the deceased person.

2. EVIDENCE. *When declarations by decedent are admissible as be-
tween third persons stated.*
Declarations made by a deceased person as to facts presumably
within his knowledge, if relevant to the matter of inquiry are
admissible in testimony as between third parties, first, when
it appears that the declarant is dead;   second, that the declara-
tion was against his pecuniary interest;   third, that it was a
fact in relation to a matter of which he was personally cognizant;
fourth, that the declarant had no possible motive to falsify the
fact declared.

APPEAL from circuit court of Sunflower county.
HON. S. F. DAVIS, Judge.
Action by Amanda Thompson Jackson against Cornelia
Johnson. Judgment for defendant, and plaintiff appeals.
Reversed and remanded.

*W. S. Chapman* and *S. C. Mounter,* for appellant.

The defendant first moved to rule out all the testimony
of the plaintiff, Amanda Thompson, on the ground that
she was testifying to establish her own claim against the
estate of a decedent. The court on this motion ruled out
all the testimony of Amanda, not only what she testified
to with reference to Andrew, but all she testified to with
reference to her dealings and connections with Cornelia,
after Andrew's death.

She testified to Cornelia sending for her and proposing
and agreeing to carry out Andrew's terms of employment;
to her staying on the place at the instance of the defend-
ant, and working and making the crop, and picking it out;
to Cornelia furnishing her, and to her taking the cotton
and driving her, with the assistance of McGee, off the place.
All of this happened, after the death of Andrew.

In the case of *Witherspoon* v. *Blewett,* 47 Miss. 570, 576,
which was a replevin suit for certain cattle the court said:
"The wrong and injury complained of by the plaintiff,

were committed after her intestate's death, and her possession as administratrix was invaded; against her right as such legal owner, was the conversion committed by the defendant. All the parties connected with the transaction, as owner and wrongdoer, are living persons. The administratrix, as owner, of the cattle caused a demand to be made of the defendant; the matters about which he was permitted to testify, connected themselves with the demand, his response thereto, the character of his possession, how acquired, and how held."

In the case of *McDonald* v. *McDonald,* 68 Miss. 689, 690, the court said: "The appellant was a competent witness to testify to what occurred after the death of his intestate. The last clause of section 1602, of the Code was for the purpose of meeting *Haralson* v. *White,* 38 Miss. 178, and has the effect to render competent as a witness any person as to anything subsequent to the death of the decedent."

Code 1906, section 1917, but this shall not apply to claims or defenses which arose in the course of the administration of the estate of such person. Her right of action did not arise until she had finished her year's work. Her right or cause of action arose after death of the decedent.

The woman, Cornelia Johnson, sent for her and employed her again to finish out the crop. She could certainly testify as to what took place between her and Cornelia Johnson. She was certainly entitled to recover for the work under Cornelia Johnson.

It was the fact that she worked in the crop at all that gave her the lien independent of any contract. The statute gives the lien for the work done. If she worked for only a few days in the crop she was entitled to a lien for so much.

She mentioned her contract of employment by Andrew Johnson simply as inducement to show how she got on the place. This is an action *in rem* for the cotton itself. The cotton did not arise until after the death of Andrew. It was not in existence until after his death. The tort was

committed by Cornelia Johnson and she is yet alive. The plaintiff is not seeking to hold the estate of the decedent for anything. Cornelia Johnson did not claim as administratrix or executrix of Andrew Johnson. She took the cotton in her own right or her own wrong more correctly speaking. She would not be allowed to get this woman's service, and go off with the product and not pay her anything, and defend on the ground that this was the estate of a decedent.

*Neil & Clark,* for appellee.

In a suit by the representatives of an estate, a defendant is incompetent to testify as to a contract between himself and the decedent. *Otey* v. *McAfee,* 38 Miss. 348; *Boylan* v. *Holt,* 45 Miss. 277.

Then for stronger reasoning, a plaintiff could not be heard in a suit instituted by her, involving a part of the estate of a deceased person, to testify as to a contract between herself and the deceased party. It is generally held that the term estate is used in a broad sense to signify all of the property of every kind or character which a decedent leaves at his death and that any right asserted against this property, which accrued to a party by virtue of dealings between him and the deceased person cannot be established by evidence of the living party. *Jacks* v. *Bridewell,* 51 Miss. 881.

In the case of *Witherspoon* v. *Blewett,* 47 Miss. 570, relied on by attorneys for appellant, on this principal the court says: "The manifest reason for the exclusion of such witness is to shut out *ex parte* evidence touching matters and transactions which transpired in the lifetime of the deceased, after death has sealed the lips of one of the parties, so that his version and explanations and statements cannot be heard. If the suit be for a tort or a contract done or made in the lifetime of the intestate, the survivor is incompetent to prove the one or the other against the estate."

The above quotations are embraced in the decision of the court to explain the true principles governing testimony of claimant to assets of an estate. The facts, however, in the case cited did not come or did not bring the case within the general rules as set out.

It is true that the cotton raised by Amanda Thompson, appellant in the instant case, was not picked until after the death of Andrew Johnson; yet, if appellant stands on the theory that she entered into a contract with Andrew Johnson, deceased, she must prove this contract by other testimony than her own, and any evidence given by appellant as to a share crop contract existing between her and the deceased, Andrew Johnson, during his lifetime, as a basis for her claim is clearly incompetent and was properly excluded by the court below in the trial of this cause. This subject is exhaustively treated and finally disposed of, so far as the case at bar is concerned, in *Whitehead* v. *Kirk,* 104 Miss. 776, the language of the court being: "Whenever a witness is offered for the purpose of proving any transaction, act, contract, admission, license, condition, etc. (whatever may be its exact nature), as a fact to be proven, and proven as a fact existing or occurring prior to the death, and the proof of such fact as then existing or occurring is determinative of a claim or right of such witness to or in property of the deceased, and establishes such claim or right directly and finally, there the witness is testifying to establish his claim which originated during the lifetime of such deceased."

SYKES, P. J., delivered the opinion of the court.

The appellant, as plaintiff in the circuit court, made affidavit before the circuit clerk under section 3044, Code of 1906 (section 2402, Hemingway's Code), in which affidavit she stated that she was employed by Andrew Johnson during the year 1919 as a share cropper, and assisted in making a crop of three bales of cotton which were, at the time of the making of the affidavit, in the possession

of the defendant, Cornelia Johnson; that under this contract she was entitled to half of this cotton, the value of same being four hundred thirty-five dollars; that Cornelia Johnson withholds the same from her, and that she claims a lien on this cotton. The plaintiff then filed a declaration, setting forth the same grounds averred in her affidavit. Cornelia Johnson, under oath, traversed every allegation of the declaration and affidavit, and claimed that all of the cotton in controversy, with the exception of five hundred fifty pounds, was grown on lands wholly cultivated by Cornelia and her children; that the five hundred fifty pounds of seed cotton was taken from the lands which plaintiff claimed to have cultivated.

The plaintiff was first placed on the stand by her attorneys, and an objection was interposed to her testifying, to which objection the court reversed its ruling. Plaintiff then testified that she was living on a little place which had belonged to Andrew Johnson during his lifetime; that she made a contract with Andrew to make a crop on the place for that year; that Andrew agreed to furnish her ten dollars a month, and she was to have one-half of the crop; the crop was to be worked by herself and two children; that she and the children worked the crop, and were practically ready to lay it by on the 3d of July, on which date Andrew Johnson was killed by his wife, Cornelia, the defendant in this case. That after Andrew was killed she had a conversation with the defendant, Cornelia Johnson, and it was agreed between them that she should continue to make the crop for one-half of it, and Cornelia was to furnish her some rations; that this contract was carried out between herself and Cornelia until cotton picking time, but that, after she and her children had picked a day and a half in this crop, Cornelia forced them to leave the place, and would not permit them to gather the crop; that during the day and a half they picked the cotton Cornelia and her children also picked with plaintiff and her children, and this cotton was all stored in the house where plaintiff was then living, but that subsequent to the time the de-

fendant compelled the plaintiff to leave the place all of the cotton was moved down to the place where Cornelia was living, a distance of about two miles. That the defendant Cornelia continued to live in the house where she and her husband had lived.

The testimony in the case does not show that any letters of administration upon the estate of Andrew Johnson were taken out, but that, so far as the little place upon which the plaintiff lived was concerned, Cornelia assumed, and was actually in charge of, and handling, this part of the estate. In other words, Cornelia was at least an executor *de son tort* to this extent.

The plaintiff offered to prove by a witness named Frank Johnson that during the lifetime of Andrew Johnson he had a conversation with Andrew relating to the contract between Andrew and Amanda about her making this crop. Counsel for the defendant asked the witness if Cornelia Johnson was present at the time, and, upon her replying that she was not, interposed an objection to the testimony of this witness about the statements of Andrew as to this contract, and the court sustained this objection, and would not permit this testimony to be given.

At the conclusion of the plaintiff's testimony, upon motion, all of it was excluded, and a peremptory instruction given for the defendant, and judgment thereupon entered in favor of the defendant.

The affidavit of the plaintiff and her declaration base her right to this lien upon her contract with Andrew Johnson. Neither in the affidavit nor in the declaration does she base this claim upon any subsequent agreement made with Cornelia Johnson, who was in charge, or who seems to have been in charge, of the estate of the deceased. The subject-matter of this litigation, namely, the cotton, is a part of the estate of Andrew Johnson. In the case of *Love* v. *Stone,* 56 Miss. 449, this court held that the test of the competency of a witness in this class of cases is whether the estate of the deceased person was the subject-matter of the litigation in which the party is offered as a witness. And in *Jacks* v. *Bridewell,* 51 Miss. 881, it is held

that—"The exclusion is not confined to cases in which the controversy is between him who would testify to his 'claim,' or 'right,' and the administrator or executor of the deceased person, but it extends to every assertion of such right by a party to any part of the estate left by a deceased person, and claimed by such party, . . . by reason of an alleged transaction between such party and the deceased person."

These cases are cited with approval in *Jackson* v. *Smith,* 68 Miss. 53, 8 So. 258.

The testimony of the plaintiff, Amanda Jackson, to the contract made between herself and Andrew Johnson was testimony to establish her claim arising during the lifetime of the deceased to his estate, which is the subject-matter of this controversy, and was therefore inadmissible under these authorities. Her testimony as to her subsequent contract with the defendant was inadmissible because she failed in her pleadings to alleged any such subsequent contract.

The court should have permitted the witness, Frank Johnson, to testify to the conversation between himself and Andrew Johnson with reference to the contract between Amanda and Andrew about this crop. These statements of Andrew were declarations against interest, and accordingly are admissible. In *Baldridge* v. *Stribling,* 101 Miss. 666, 57 So. 658, with reference to declarations of this character, the rule is there laid down that they are admissible when made by a deceased person as to facts presumably within his knowledge if relevant to the matter of inquiry:

"First. When it appears that the declarant is dead. Second. That the declaration was against his pecuniary interest. Third. That it was a fact in relation to a matter of which he was personally cognizant. Fourth. That the declarant had no possible motive to falsify the fact declared."

For the exclusion of this testimony, the judgment of the lower court will be reversed, and the cause remanded.

*Reversed and remanded.*