CONEY, et al. *v.* CONEY, et al.

No. 42904 May 4, 1964 163 So. 2d 692

562

*Robert S. Reeves, Roach & Roach,* McComb, for appellants.

*O. W. Phillips,* Magnolia, for appellees.

Rodgers, J.

The appellants filed a bill of complaint in the Chancery Court of Pike County, Mississippi, to establish their claim to 340 acres of land deeded by them and their brothers, to another brother, M. M. Coney. It is contended that the title to the property was taken in his name and held for the use and benefit of the Coney Brothers, including the appellants, but M. M. Coney,

in violation of his trust relationship to his brothers and their heirs, deeded the property to his children just a few days before his death, and that therefore a resulting trust occurred in favor of the claimants to the real estate, entrusted to M. M. Coney.

The claim of the appellants grew out of the following facts: John C. Coney and his six sons, John L. Coney, U. S. Coney; M. M. (Myrt) Coney; James Coney; Van Coney; and Early Coney, purchased 340 acres of land from V. C. Dickey on March 17, 1919. They gave a trust deed on the property, to secure the purchase money, to F. W. Reid, dated March 17, 1919, for the sum of $6,200. Some of the brothers owned separate homes and other land, and their individual real property was included as security for the payment of the trust deed due to F. W. Reid. Thereafter, on December 15, 1921, the brothers deeded this property to one of the brothers, M. M. (Myrt) Coney. On February 1, 1922, M. M. Coney and his wife, Myrtis Coney (first wife) gave a trust deed to the Federal Land Bank of New Orleans on the property here involved and paid the mortgage due to F. W. Reid. Thereafter, on December 31, 1958, M. M. Coney and wife, Emma (second wife), deeded to U. S. Coney a part of this property (60 acres), reserving a one-half interest in the oil, gas and minerals in the land. The land records of Pike County show that M. M. Coney and his wife, Emma, deeded their land to William B. Nelson on September 6, 1932. The latter deed was cancelled as a mortgage by the Chancery Court of Pike County, Mississippi, on April 21, 1952. The decree of that court was affirmed by this Court in the case of Nelson v. Coney, et ux, 224 Miss. 485, 80 So. 2d 476, in 1955. Oil, gas and mineral leases were given on the property and were finally purchased by the Pan American Oil Company, a corporation. Since the final decree was entered in this case in favor of the Oil Company, their interest is no longer at issue here.

M. M. Coney died about the 5th day of March 1960. A few days before his death, he, and his wife, Emma, deeded the described property to his children.

Appellants contend that M. M. Coney was the bookkeeper and the "leader" of the partnership and he got them to make a deed to him by telling them it was necessary to put the title to the property in his name and that the brothers deeded the property here involved to him, for the purpose of procuring a loan from the Federal Land Bank of New Orleans, Louisiana, to pay the trust due F. W. Reid. They claim that they continue to operate this property after the deed had been put in the name of M. M. Coney; that they had an account at Lampton-Reid's Store in the name of "Coney Brothers", and that they operated the place by drawing on this credit. They contend they worked the property, raised corn, cotton and finally sugar cane, in order to pay the loan due the Federal Land Bank. It is charged that during the "Depression" Prof. William B. Nelson took over the property after it had been sold by the Federal Land Bank and that the Brothers all helped pay the debt until finally the timber was sold on the property and the Bank was paid in full, the balance of the money divided and the property returned to the name of M. M. Coney by decree of the court.

On the other hand, the wife and children of M. M. Coney contend that all of the Coney Brothers left and had nothing more to do with the property or the debt on the property after it was deeded to M. M. Coney, except U. S. Coney, who got sixty acres of the land. They point out that the homes of the Brothers were tied up in the trust deed to F. W. Reid so that the payment of this trust deed released their homes and thereafter the Brothers "dropped out." Some of them got in trouble and left, and others died.

The testimony is conflicting. U. S. and Early Coney, Brothers of the deceased M. M. Coney, testified for

the complainants, and the wife and children of M. M. Coney testified to establish their defense. The complainants attempted to show by several witnesses that M. M. Coney said his Brothers had an interest in the property and that he recognized their interest in the "Big Place", but this evidence was stricken by the chancellor. The complainants objected to the testimony of the wife and children of M. M. Coney, but the court overruled this objection. The chancellor entered a decree in favor of the defendants, dismissing the bill of complaint, and from this decree the case has been appealed to this Court.

██ █ A painstaking examination of the record, the briefs, and our research has convinced us that the chancellor reached the proper determination of this case by finding for the defendants in dismissing the complainants cause of action, and enjoining the complainants from further proceedings against defendants. Our reasons for this conclusion are summarized in the following paragraphs.

The testimony of the many witnesses are in hopeless conflict. The witnesses for the complainants testified largely in support of the complainants' theory of the case, that the property was put in the name of M. M. (Myrt) Coney in order to obtain a loan and that the "Coney Brothers" worked the property and paid the debt due for the purchase of the property. U. S. Coney, however, admitted that had it not been for "Professor Nelson, M. M. Coney and U. S. Coney" the property would have been lost, and he also admitted that he obtained his sixty acres through M. M. Coney and that he did not consider it necessary for the other Brothers to sign his deed. The testimony for the defendants by their witnesses supports the defendants' theory that the "Coney Brothers" did not claim an interest in the "Big Place" after it was deeded to M. M. Coney, and that he paid it out with the help of his family, Prof. Nelson and U. S. Coney.

The record further discloses that the complainants, appellants here, made no effort to prevent the transfer of the land at the time it was conveyed to William B. Nelson, September 6, 1932, nor at the time when M. M. Coney filed a bill to cancel the deed to Nelson in 1955. In that suit M. M. Coney claimed to be the owner of the property. Moreover, some of the "Coney Brothers" actually testified as witnesses upon the trial in that cause of action.

The chancellor accepted the testimony and theory of the defendants and we cannot say in so doing he was manifestly wrong. He expressly stated that he was not impressed with the testimony of the complainants, and it seems to us that had the chancellor done otherwise, he would have necessarily overlooked the fact that the title to this property had been in M. M. Coney and in Prof. Nelson for approximately thirty-seven years, and during this time the original partners had "dropped out", had scattered, and some had died, and none had shown any interest in the property, with the exception of U. S. Coney, who obtained his title from M. M. Coney to a part of the land.

As a general rule, when a person undertakes, by verbal testimony, to show a claim to real estate growing out of an alleged resulting trust, in opposition to his written deed, he must establish the resulting trust by clear, unequivocal, cogent and convincing evidence. Laughlin v. Mitchell, 121 U. S. 411, 7 S. Ct. 923, 30 L. Ed. 987; Stricker v. Morgan, 361 U. S. 963, 268 F. 2d 882, 4 L. Ed. 2d 544; Dismukes v. Terry, 1 Walker 197 (Miss.); Logan v. Johnson, 72 Miss. 185, 16 So. 231; Bush v. Bush, 134 Miss. 523, 99 So. 151; Saulsberry v. Saulsberry, 232 Miss. 820, 100 So. 2d 593; Green v. Frazier, 242 Miss. 315, 135 So. 2d 399; 54 Am. Jur., Trusts, § 602, p. 465, §618, p. 477. Moreover, such verbal testimony should be received with caution. Conner v. Conner, 238 Miss. 471, 119 So. 2d 240; 54 Am.

Jur., Trusts, §620, p. 478; Anno. 23 A.L.R. 1536. This is especially true where there has been a great delay in asserting the claim, because records and deeds are not to be easily overturned. 54 Am. Jur., Trusts, §581, p. 449; Streeter v. Gamble, 298 Ill. 332, 131 N.E. 589, 23 A.L.R. 1485. It has been said that "It is clear that something more than mere preponderance of the evidence is required to overcome the presumption in favor of the holder of the legal title or the person having apparent ownership thereof, and to establish a trust by parol." 54 Am. Jur., Trusts, §621, p. 480.

The facts in this case are somewhat similar to the facts shown in Thames v. Holcomb, 230 Miss. 387, 92 So. 2d 548, except in Thames there was an expressed trust to do an act at a definite time, and having failed to so do, the trust was barred under §746, Miss. Code 1942. In the instant case the testimony did not establish a definite time when it was contended the property was to be reconveyed, the chancellor obviously considered the fact that the property was conveyed to William B. Nelson in 1932, and that a part of the property was conveyed to U. S. Coney on December 31, 1958, and that such conveyances indicated that M. M. Coney claimed the property as his own. We do not deem it necessary to pass upon the assertion that the claim of the appellants is barred by the statute of limitations in the instant case, but point out in passing that this Court, quoting from 34 Am. Jur., p. 143, Limitation of Actions, Par. 179, said: "It is generally held that no repudiation of an implied or constructive trust is necessary to set the statute of limitations in operation. In such cases, the general rule is, at least in the absence of fraud or concealment, that the statute runs from the time when the act was done by which the party became chargeable as trustee by implication or, as is sometimes expressed, from the time when the cestui que trust could have enforced his right by suit." Trigg v. Trigg, 233 Miss. 84, 101 So. 2d 507.

The two principal contentions on which the appellants seek to obtain a reversal of the decree of the chancery court are based upon the allegedly erroneous ruling of the chancellor on evidence in the chancery court. It is vigorously asserted, first, that the chancellor erroneously refused to permit the witnesses for the complainants to testify that M. M. (Myrt) Coney repeatedly admitted that his Brothers had one-sixth interest each in the "Big Place" and that he intended to make a division of the property upon an accounting as to taxes and rent; second, it is contended that the chancellor erred in permitting the grantees, children of M. M. Coney, to testify, in defense of their deeds made to them by their deceased father, M. M. Coney, against the estate of the deceased "Coney Brothers."

 The appellants base their first contention, supra, upon the rule that declarations against interest of a deceased person are admissible when relevant to the matter of inquiry: "First. When it appears that the declarant is dead. Second. That the declaration was against his pecuniary interest. Third. That it was a fact in relation to a matter of which he was personally cognizant. Fourth. That the declarant had no possible motive to falsify the fact declared." Jackson v. Johnson, 126 Miss. 26, 88 So. 410. See Saffold v. Horne, 72 Miss. 470, 18 So. 433; Baldridge v. Stribling, et ux, 101 Miss. 666, 57 So. 658; Jenkins v. Jenkins, 232 Miss. 879, 100 So. 2d 789; 54 Am. Jur., Trusts, §§615, 616, p. 475; Tilford v. Torrey, 53 Ala. 120; Gainus v. Cannon, 42 Ark. 503; Norton v. McDevit, 122 N. C. 755; McCammon v. Pettitt, 35 Tenn. 242; Sandford v. Weeden, 49 Tenn. 71; Mixon v. Miles, 46 S. W. 105 (Tex. Civ. App.); 20 Am. Jur., Evidence, §606, p. 519. We agree that this rule has been generally accepted, not only by this Court but by most of the courts in other states. ·

The courts have generally held, however, that evidence is not entitled to much weight, but should be received

with great caution, as it is easy to fabricate, and difficult to refute, after the death of the grantor. 20 Am. Jur., Evidence, §608, p. 521.

In the instant case testimony offered by the witness U. S. Coney was to the effect that he had talked to his brother M. M. Coney about the land being the property of the Brothers, and he said he "was going to fix it." At another point, he was asked "Did Myrt ever recognize your interest?" The court reserved a ruling and he answered "Yes he did." Again he was asked "Will you state whether or not Myrt has recognized each brother as entitled to a sixth?" and answered "He did." Later the court said "I sustain the objection to the question, and I am going back and sustain the objection as to the form of the question as to whether he recognized each had a sixth interest unless counsel establishes how and in what manner he recognized it. I am going to sustain the objection as being the conclusion of the witness." The witness was then asked what, if anything, did Myrt do to show he recognized the interest of the Brothers, "Did he do anything else?" and answered "No, no, no more than he said it was our place." The court then said "Let the record show the objection and the objection is sustained as to any oral conversation with Myrt Coney." Other witnesses were asked if M. M. Coney recognized the interest of the Brothers in the land, however the statements of M. M. Coney alleged to have been made were not offered as detailed statements, that is, what he actually said, with the attending circumstances, but the witnesses were asked for their conclusions. Conclusions and opinions of a witness as to what has been said are not ordinarily admissible in evidence, as admissions or statements against interest. 31A C. J. S., Evidence, §272, p. 700.

We do not believe the ruling of the chancellor was erroneous and harmful, in view of the form of

the statements, and for the further reason that most of the admissions were actually introduced in evidence, although introduced in the form of a conclusion of the witness that "Myrt recognized your interest in the land." Acker v. Priest, 92 Iowa 610.

The rule as to declarations against interest has undergone careful scrutiny by the courts, and it has been said:

"* * * Many courts state that while a party's declarations or admissions are evidence against him, the testimony of one who overheard them is to be viewed with caution, inasmuch as the witness may have misunderstood what the party said or may have unintentionally altered the expressions actually used so as to give an erroneous impression of what was meant.

"Admissions and declarations, particularly of persons since deceased, where not supported by other proof, especially so much of them as are not against proprietary interest, are regarded as of comparatively little probative value and should be scrutinized carefully. Courts, it is said, lend very unwilling ears to testimony of statements of what dead men have said. Such testimony is often regarded as the weakest and least satisfactory of any." 20 Am. Jur., Evidence, §1196, at p. 1048. Cf. Hood v. Bowman, Freeman's Chan. 29 (Miss.); Hope v. Evans, S & M 195 (Miss.); Campbell v. Henry, 45 Miss. 326; Tilford v. Torrey, 53 Ala. 120; Hatton v. Landman, 28 Ala. 127; Corder v. Corder, 124 Ill. 229; Bragg v. Geddes, 93 Ill. 39; Acker v. Priest, 92 Iowa 610; Woodford, et al. v. Stephens, et al., 51 Mo. 443; Ringo v. Richardson, 53 Mo. 385; Hall v. Layton, 16 Tex. 262.

■■ Although declarations and admissions are admissible to prove or disprove a trust, such evidence is subject to the same rules of evidence as is true with reference to the admissibility of declarations and admissions generally. See 54 Am. Jur., Trusts, §616, p. 475. To be competent as an admission, a statement

must be one of fact, except, perhaps, as to physical condition. Hickey v. Anderson, 210 Miss. 455, 49 So. 2d 713. A statement of declarant's opinion or conclusion respecting a matter in issue is generally held inadmissible as an admission. 31A C. J. S., Evidence, §272, p. 700.

Appellant's contention that the court erred in permitting appellees, Allen, Albert and Lonnie Coney to testify to establish their defense against the estate of the deceased "Coney Brothers", Van, John L. and James Coney is based upon §1690, Miss. Code 1942, the pertinent part of which is as follows: "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. * * *"

We are of the opinion, however, that the appellants cannot raise an objection based upon the foregoing code section for the reason that they offered two brothers of the deceased M. M. Coney to prove the claim of the "Coney Brothers" against the alleged trust estate said to have been wrongfully transferred by M. M. Coney to his sons.

The rule appears to be well-established that the examination of one witness incompetent under the dead man's statute operates as a waiver of incompetency of adverse witnesses, at least where the testimony of such adverse witness is offered after the examination of the first witness, and as to matters testified to by such first witness. Baker v. Baker, 363 Mo. 318, 251 S. W. 2d 31, 33 A. L. R. 2d 1431; Anno. 33 A. L. R. 2d 1441.

We are therefore of the opinion that the decree of the chancery court should be, and is, hereby affirmed.

Affirmed.

*Kyle, P. J., and Gillespie, McElroy and Patterson, JJ.,* concur.