MARTIN v. NEW YORK & ST. L. MINING & MFG. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1908.)

No. 2,801.

1. TRUSTS (§ 76*)—REAL ESTATE—RESULTING TRUST FROM UNAUTHORIZED USE OF MONEY OF ONE TO BUY LAND IN ANOTHER'S NAME—OWNERSHIP OF MONEY BY ALLEGED CESTUI QUE TRUST INDISPENSABLE.

It is indispensable to the existence of a resulting trust in land on the ground that the money of the complainant has been used without his consent to acquire the title to the land in another that the complainant should have been the owner of the money when it was used.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 108; Dec. Dig. § 76.*]

2. TRUSTS (§ 80*)—TRUST VS. LOAN—OWNERSHIP OF MONEY—FACTS—CONCLUSION.

Suit was brought against C. and his corporation to charge the property and profits of the latter with a trust because C. had used complainant's money without the latter's knowledge to acquire land in the name of the corporation. Complainant testified that he gave C. $4,000 with the understanding that he should place it in escrow with a trust company to be held there to assure the vendors of land that the required payment would be made by C.'s mining company, and to be returned to him at the end of 10 days, when C. said he would have secured a loan upon some bonds of his company which he was about to obtain. C. testified that he borrowed the $4,000 of the complainant, that nothing was said or understood about placing it in escrow or in trust, and that he used it, not to pay for the land, but to buy materials for and to pay expenses of his corporation. At the time the $4,000 was paid over to C. by the complainant the latter gave to the former his promissory note for $4,000 and interest payable in 10 days, and a written agreement to give him 40 shares of the stock of his company "in consideration of loan and other promotion benefits." Complainant urged C. to pay, and some years later, and before this suit, C. did pay, the note.

*Held*; the transaction was a loan. The money the complainant gave to C. upon receipt of his note immediately became C.'s money, and no trust arose in favor of complainant out of C.'s use of the money for his corporation.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 114; Dec. Dig. § 80.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

William H. Clopton, for appellant.

George D. Reynolds (George V. Reynolds, on the brief), for appellees.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before SANBORN and VAN DEVANTER, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge. In July, 1902, the defendant below, the New York & St. Louis Mining & Manufacturing Company, was a corporation, and the defendant, M. B. Coburn, was its treasurer and general manager. The corporation bought 8,187 acres of land in the state of Tennessee, for which it agreed to pay $87,000. The land was conveyed to it by a deed dated July 10, 1902, and recorded July 28, 1902. After this deed was recorded the mining company issued bonds to the amount of $500,000, and secured them by a mortgage upon this land and other property. In December, 1907, the complainant below, John E. Martin, exhibited his bill against the mining company and Coburn to recover four-fifteenths of this land and of the profits of the corporation, upon the ground that without his consent Coburn had used on July 28, 1902, $4,000 of his money to pay some of the necessary expenses of the corporation in acquiring the land and to pay a part of its purchase price. The defendants denied that any of the complainant's money had been used for these purposes, and Coburn alleged that on July 28, 1902, he borrowed $4,000 of the complainant, that this $4,000 was thereafter his money and not that of the complainant, and that he had subsequently paid back to him and he had received $4,000 and interest on account of this loan. The court below found the issues for the defendants and dismissed the bill, and the complainant has appealed.

The theory of the bill is that Coburn used $4,000 of the complainant's money without his consent to obtain the land which was deeded to the corporation, that this $4,000 was four-fifteenths of the entire amount used to obtain this land, and that four-fifteenths of the land and of the profits made by the mining company by the use of it were charged by these facts with a resulting trust in favor of Martin. Conceding that if these facts were established by the proof the complainant would have been entitled to relief, it was indispensable to the maintenance of the bill that the complainant should prove that the $4,000 was his money and not Coburn's at the time when Coburn used it, and that he should establish this fact by clear and convincing evidence, for a resulting trust in the title to land vested by writings and record in another may be established only by strong and persuasive proof. Shaw v. Shaw, 86 Mo. 594, 598; Laughlin v. Mitchell (C. C.) 14 Fed. 382, 388; Id., 121 U. S. 411, 7 Sup. Ct. 923, 30 L. Ed. 987. Did the evidence in this case thus establish the averment that Martin was the owner of the $4,000 when it was used by Coburn? The complainant testified that on July 28, 1902, Coburn told him that he had control of some property in Tennessee upon which the mining company had to make a payment in order to hold it, and that he would like to have $4,000 or $5,000 for a few days; that Martin replied that he would let him have it, but that he wanted it back within 10 days; that Coburn then said that the payment had to be made, that a loan on the property had been arranged, and that Martin could be absolutely sure of the money in 10 days; that Martin then said to Coburn: "Now

I will let you have this money with this understanding, Mr. Coburn, that this money is placed in escrow with those people. Then if your deal goes through the people to whom this payment was to be made to hold this property can be satisfied that the money was there for them, and the trust company could either deduct the $4,000 and the loan they were making you, if it was more than that amount, or else it could be taken out of the loan that they were making," and Coburn answered, "I will take no chances with this money at all and see that you take no chances. You shall have the money back within ten days" —and thereupon Martin paid over the $4,000 to Coburn. Martin further testified that shortly before August 25, 1902, he received a telegram from Coburn in these words, "Wire me whether I can use the money," and that on August 23, 1902, he wrote to Coburn in this way:

"Your message and letter were received the same day. Was away for some time. Regarding the money: Be sure to have it here (Mpls) Sept. 20. Did not write when I got back thinking that if you had a dead sure thing with big money in sight you would use it anyway."

On the other hand Coburn testified that he told Martin about July 28, 1902, that he wanted $4,000 or $5,000, that the mining company was issuing bonds, that he was to have $65,000 of them, that a party had agreed to loan him $27,000 on $30,000 of them as soon as they were printed and signed, that he could get the money in that way to pay $4,000 back in 10 days, that Martin then loaned him the $4,000 and took his promissory note for it and an agreement from him to give Martin 40 shares of the stock of the mining company. He testified that nothing was ever said about placing the money with a trust company in escrow, that if it had been so placed he could not have used it, and that he never heard that Martin claimed any interest in the property of the company on account of the $4,000 until after the bill in this suit was filed.

The evidence was uncontradicted that Coburn used the money between July 29, 1902, and August 13, 1902. If the testimony of Martin was true, the money was then his, and Coburn converted it to the use of his mining company; if Coburn told the truth, Martin then had no title to the money, and the relation between them was that of debtor and creditor. The court below found this issue in favor of Coburn. Its finding may not be reversed unless it clearly appears that it fell into some error of law or made some mistake of fact in reaching its conclusion. There is no substantial evidence in the record except the testimony of Martin, which is inconsistent with its finding. Its conclusion is supported by the facts that on July 28, 1902, when Martin gave Coburn the $4,000, the latter executed and delivered to him his promissory note for that amount and for interest at 10 per cent. per annum after maturity, payable to the order of Martin on August 10, 1902, and a written agreement "to give J. E. Martin forty shares New York and St Louis Mining and Manufacturing Company stock in consideration of loan and other promotion benefits"; that Martin repeatedly asked Coburn, by letters in evidence, to pay the $4,000 and interest to him, and Coburn did pay it before this suit was commenced; and that Martin never claimed or demanded any interest in the prop-

erty or profits of the mining company until he commenced this suit in December, 1907, after he had received from Coburn the $4,000 and interest. No analysis or discussion of this evidence can make the legal conclusion it compels much clearer. The promissory note was the usual evidence of a loan. The parties themselves called the transaction a loan in the simultaneous written agreement about the 40 shares of stock. The writings evidence a loan, and nothing more. There was no agreement in writing from which a bailment or any other relation than that of debtor and creditor could be inferred, and the complainant affirmed and took the benefit of that relation until he persuaded Coburn to pay the debt. These acts of the parties demonstrate more plainly than words or oaths the true nature of the transaction of July 28, 1902. They bear into the mind a firm conviction that when Coburn used this money it was his, and not Martin's, so that no resulting trust could have arisen in favor of the complainant from that use. This conclusion is fatal to the complainant's case, and it renders the consideration of other questions which have been presented and learnedly discussed by counsel unnecessary.

The decree below must be affirmed, and it is so ordered.

NOTE.—The following is the opinion of Dyer, District Judge, filed in the court below:

DYER, District Judge. This is a proceeding in equity in which the complainant (a citizen of Minnesota) seeks to recover an interest in property now owned by the defendant company in the state of Alabama. The defendant company is a corporation created prior to the 28th of July, 1902, and organized for the purpose of buying and selling mineral lands, mines, and quarries in the states of Tennessee and Arkansas, and for the purpose, also, of building, equipping, and operating mills and reduction works, and for manufacturing and selling fertilizers, and for other purposes.

The bill sets forth: That in 1902 Arthur R. Jones was president, Evans R. Darlington vice president, Harry R. Danner secretary, and the defendant Melville B. Coburn treasurer, of the corporation. That Coburn was appointed manager of the company, and while so acting procured to be made to said company a deed for 8,187 acres of land in Hickman county, Tenn., dated July 10, 1902. That the consideration for said lands was $87,000, to be paid as follows: $5,000 cash; $10,000 on or before the 25th of July, 1902; $50,000 on or before the 5th day of October, 1902; $15,000 on or before the 6th of October, 1902; and $7,000 on or before the 5th of January, 1903. That the deferred payments were evidenced by notes bearing 6 per cent. interest and secured by lien on the property conveyed. It was further provided that the note for $50,000, given as aforesaid, might be satisfied by first mortgage bonds of the company, thereafter to be issued, and $50,000 of its common stock, also to be thereafter issued. It is alleged in the bill that the note for $50,000 was, in the manner provided, discharged. It is further alleged in the bill that the corporation did not have means sufficient to meet its said obligations as they respectively became due and to carry on the business for which it was organized, and that on the 28th of July, 1902, the defendant Coburn had in his possession the sum of $4,000 belonging to complainant, and that afterwards at the request of the defendant corporation this sum of money was used in part for the purpose of meeting said notes, and partly for purchasing material for the prosecution of the business of the corporation, etc., and that it was so used without the knowledge or consent of complainant. It is further alleged that the defendant company in August, 1902, issued bonds in the sum of $500,000, due in 20 years, and that these bonds were secured by a deed of trust on all of the property of the defendant corporation. It is further alleged that the said $4,000, paid as aforesaid, amounts to four-fifteenths of the cash paid; for said

165 F.—26

lands, and that therefore he is entitled to that proportion of said lands and the profits made out of the working of the same, etc.

The answer of the defendant corporation is in effect a specific denial of all of the material allegations made in the bill. The defendant Coburn makes answer in substance the same as his codefendant, but further says that the $4,-000 alleged to have been the money of complainant was in fact money that he had borrowed from complainant, and for which he had executed his note on the 28th of July, 1902; that from time to time he made payments on the note, so that the whole amount thereof, with 10 per cent. interest thereon, was fully paid before the commencement of the present action.

The complainant claims that under the allegations contained in the bill, and the evidence taken in support thereof, a "resulting trust" has been accrued in his favor, and that in equity he is entitled to an interest in the property of the defendant corporation equal to four-fifteenths of its property. The defendant corporation disputes this contention. The defendant Coburn not only disputes the contention of the complainant, but claims that the $4,000 was loaned to him by the complainant, and that the sum was paid back, with interest, before the suit was brought.

The evidence in the case is quite voluminous, and counsel in the case have been diligent and painstaking in the preparation of briefs and in the oral presentation of the case. The evidence shows that the defendant Coburn was a moving spirit in the organization of the defendant company, and that he had much to do with procuring the conveyance of the property from Meeks and others to the company. The evidence further shows that the "cash" payment of $5,000 was made by Jones on the 10th day of July, 1902, and the payment of $10,000 due July 25, 1902, was also made by Evans. The evidence, seemingly undisputed, shows that the cash payment made by Jones was in the form of a New York draft, drawn by the National Bank of the Republic of Chicago, to his order. This was indorsed by Jones and delivered to Hamilton Parks, attorney for the company, who turned the same over to the grantors in the deed. The $10,000 payment due July 25, 1902, was paid by one Evans, who took up a draft for that amount at the Corn Exchange National Bank; the note being attached to the draft.

The evidence shows that Coburn was greatly interested in carrying successfully through what he calls "the deal." He had but little ready money at the time, and was anxious to raise $4,000 or $5,000 for the purpose of furthering the consummation of the project, to acquire the property for the company, and to enable the company to issue and float its bonds and issue its stock. This done would, as Coburn claimed, give him many of the bonds and much of the stock of the company, from which he claimed he could realize a large sum of money. Finding himself short of money, he went in July, 1902, to Minneapolis, the residence of complainant, for the purpose of raising the sum needed, through the assistance of complainant. It appears that the complainant and Coburn were well acquainted with each other, and had been engaged together in business ventures in Wisconsin and in Joplin, Mo. After reaching Minneapolis it appears that Coburn explained quite fully to complainant his condition and wishes, and sought to get complainant to become interested in the business of defendant company. This complainant declined on the ground that he had interests in Canada that required all of his capital. It was suggested by complainant to Coburn that he (Coburn) might be able to make a loan for a short time at a bank in Minneapolis. The two went together to the bank, where negotiations for the proposed loan were unsuccessful. Complainant then said to Coburn, in effect, that if he (Coburn) would return the money ($4,000) in ten days he would let him have the amount. Coburn assured him that this would be done. Thereupon Coburn executed and delivered to complainant a note, a copy of which is as follows:

"$4,000.  July 28, 1902.

"August 10th, after date, without grace, for value received, promise to pay to the order of J. E. Martin, four thousand (4,000) dollars in United States gold coin, or its equivalent, with interest at the rate of ten per cent. per annum from date until paid, payable at the Northwestern National Bank. Interest on this note to maturity has been paid in advance.

"[Signed]  Melville B. Coburn."

The money was furnished in the shape of drafts to Coburn. The proceeds of these drafts, or the greater portion thereof, were used by Coburn in the purchase of materials, etc., for the company. The note became due, but was not paid. The evidence shows that repeated demands were made by complainant on Coburn for the money. Continuous and persistent demands for payment were made. These payments were all made before the beginning of the present suit.

The complainant claims that the $4,000 was not a loan, but was to be deposited with the Colonial Trust Company in St. Louis, to the end that the trust company might register the bonds of the company and agree to act as its financial agent, etc. If the $4,000 was a loan (and so understood by the parties at the time the same was made), to be paid back, with interest, then the complainant's contention that there is in him a "resulting trust," which entitles him to an interest in the property equal to four-fifteenths cannot be maintained.

I have examined as carefully as I could the evidence in the case, and have reached the conclusion that it does not sustain complainant's contention. In my judgment the transaction on the 28th of July, 1902 (when the note was given for the $4,000), was simply and purely a loan. Martin let Coburn have the money on the assurance that it would be paid back in a certain number of days. This was not done. The letters of Martin to Coburn (covering a long period after the note was matured) convince me that Martin always regarded the money he let Coburn have as a loan, and the fact, if it be a fact, that Coburn at various times promised to compensate Martin for the losses he claims to have sustained in Canada by the failure of Coburn to return the money at the time promised, does not in my judgment militate in the least against the contention of Coburn that the transaction on the 28th of July, 1902, was "simply and purely a loan." It is unnecessary, in my view of the evidence, to enter into a discussion of what is and what is not a "resulting trust"; for it is practically conceded by counsel for complainant, as I understand him, that, if the $4,000 transaction was a loan, then no trust resulted to complainant.

It follows, therefore, that the complainant's bill must be dismissed; and it is so ordered. The same order will be made in regard to the defendant Coburn's cross-bill.