OLMSTEAD et ux. *v.* OLMSTEAD

No. 40821          June 2, 1958          103 So. 2d 399

*Williamson, Williamson & Smith,* Meridian; *Morse & Morse,* Poplarville, for appellants.

*Snow, Covington & Shows,* Meridian, for appellee.

HALL, J.

This is an appeal from a decree of the Chancery Court of Lauderdale County setting aside a deed executed by

Mrs. Tabitha Olmstead to her son Clarence Olmstead and his wife Mrs. Lura Olmstead.

The bill of complaint was filed on March 1, 1957, and seeks a cancellation of the deed in question solely on the ground that the defendants had promised in the deed and took the same subject to a covenant to support and care for the complainant for the duration of her life, and that the defendants had failed to do so and that such failure constituted a fraud upon the rights of complainant.

The deed in question was executed by the complainant on August 6, 1949, and provided that in consideration of the love and affection which the grantor bore to her son Clarence and in further consideration of the agreement of said son to support her during the remainder of her life so long as she shall be in the home with him "(which privilege I shall have during my lifetime to exercise or not as I see fit)", the grantor conveyed to the said son a life estate for the duration of his lifetime and of his wife Lura. It then described approximately 5 or 6 acres of land on which the grantor's home was situated and then provided that at the death of the survivor of the said Clarence and Lura the title to said property shall revert to the grantor's right heirs in fee simple.

At the time of the execution of this deed in 1949 the complainant was a widow, her husband having died about 1941. Clarence had always lived in the home with her. He was a single man at the death of his father and continued to reside in the home, which was the property of the mother, on up until the present time. In 1945, with the consent of his mother, Clarence married and brought his wife into the home with the mother, and at the time the deed was made Lura had been living in the home about four years and apparently they all got along fine together. The mother testified that Clarence has not been mean to her or mistreated her.

On November 7, 1955, the complainant suffered a paralyptic stroke. One of her sons at that time resided with-

in less than a quarter of a mile from the home and she also had three daughters, one of whom lived in Birmingham, one in Dallas, Texas, and one in Waxahachie, Texas. All of the children were immediately notified of their mother's stroke, and all of them came. This placed the three daughters in the home and it seems from the record that Mrs. Curtis, who lives in Dallas, Texas, remained there the greater portion of the time. In their testimony they painted a very ugly picture of how Clarence constantly neglected and mistreated his mother, and they included his wife in the same category. Mrs. Curtis came in January and remained at Clarence's home for eight weeks when, at his instance, her mother was carried to Dallas to spend a while with her. One of the best evidences as to how Clarence and his wife treated the sisters and the mother is a card which Mrs. Curtis sent to Lura shortly after her return to Dallas, which reads: "Thank you. It was so nice of you to be so kind to us while we were there. Lura I love you and Lottie both for being so nice to Mama. It means so much to me to see she is so well taken care of. I regret that I can't be near to do the little things for her. Hope you all have gotten some relief from the heat by now. It was nice and cool here for a few days, but it is back hot again. Thanks again for being no nice. Lots of love."

Apparently at the time this letter was written all of the parties were well satisfied with the treatment which both they and their mother had received in the home of Clarence and his wife, but later on Mrs. Curtis heard about the deed in question and obtained a photostatic copy thereof, and then the attitude of all the children suddenly changed, and it is apparent that they are the ones who encouraged the filing of this suit.

They tried to make it appear that when Mrs. Olmstead went to Dallas she was literally forced out of the home by Clarence, but the record shows that Clarence owned a Nash automobile which was arranged so that one-half

of the front seat could be let back to connect with the rear seat so as to make a bed, and Mrs. Curtis, who insisted on her mother going to Dallas, requested Clarence to use his automobile to carry Mrs. Curtis and her mother out there, and he finally agreed to do so.

At the conclusion of the trial the court dictated an opinion in the record cancelling the deed in question, during the course of which he commented on the fact that the deed provided ''so long as I shall be in the home with him (which privilege I shall have during my lifetime to exercise or not as I see fit)'', and the court remarked that this was a ridiculous provision in the deed. We do not think so. To us it is perfectly apparent that Mrs. Olmstead thought that she might want to go at times to spend a while with some of the other children and she particularly dictated this provision to be put into the deed for the purpose, as we see it, to prevent her from having been held to have waived the right to still be cared for in the home and not to have abandoned the same should she decide to spend a week, a month, or longer with one of the other children.

It is well settled by the Mississippi authorities that the grantor is not entitled to cancellation of a deed which was executed in consideration of an agreement to support her, but such grantor's remedy is by a suit for damages for breach of the agreement to support. In the case of Dixon v. Milling, 102 Miss. 449, 453-4, 59 So. 804, this Court said: ''It is claimed that appellant failed to care for and support his mother during the latter part of her life, and it is admitted that for a time after the execution of the deed he did properly take care of her. Have the appellees the right to rescind and cancel the deed of conveyance because of the failure of a part of the consideration which they claim induced them to execute the same? It is stated is 13 Cyc. page 593, that want or inadequacy of consideration by itself, or a subsequent partial failure of consideration, is no ground for setting

aside a deed. In the case of Day v. Davis, 64 Miss. 253, 8 South. 203, the following is announced as the rule relative to the right of a grantor to set aside a voluntary deed: 'A voluntary conveyance of land cannot be vacated, at the instance of the grantor thereof, upon the mere ground that it was made without any consideration; nor will such grantor be permitted to dispute the existence of the consideration expressed in the deed.'

"There have been various decisions of the courts relative to the right of a grantor to vacate a deed for failure of consideration, where such consideration consisted of a promise by the grantee to support and care for the grantor during the remainder of the grantor's life. In connection with this, it is stated in Pomeroy's Equity Jurisprudence, vol. 2, par. 686, as follows: 'The general rule that the mere failure by grantee to perform a promise, which formed the whole or part of the consideration inducing an executed conveyance, gives rise to no right of rescission in the grantor, either at law or in equity, unless such promise amounts to a condition; and it is a rule of construction that, in case the language or intention is doubtful, the promise or obligation of the grantee will be construed to be a convenant, limiting the grantor to an action thereon, and not a condition subsequent with the right to defeat the conveyance.' In the states where the courts have granted cancellation of a deed on the ground of hardship of the situation, and for similar reasons, the rule relative to constructive fraud has been extended to great and uncertain lengths. This court will follow the rule as announced in the foregoing quotation from Mr. Pomeroy, and this is fully sustained in the case of Gardner v. Knight, 124 Ala. 273, 27 South. 298. In that case it is decided that a deed conveying land in consideration of an agreement to support the grantor cannot be cancelled for breach of the undertaking; the remedy being by an action on the undertaking.

"The deed in the instant case is absolute on its face. The validity of the deed as an operative conveyance can-

not be successfully attacked for the reason that appellant has not fully performed the promise which it is claimed that he made and formed the consideration inducing appellees to execute the instrument.'' See also the case of Lee v. McMorries, 107 Miss. 889, 66 So. 278, which follows Dixon v. Milling.

In the opinion which he dictated in the record, the chancellor entirely ignored the grounds for relief which had been alleged in the bill and never did pass on the same. For some strange reason he jumped onto the proposition of confidential relationship as avoiding a deed. At the beginning of the opinion he said: ''This being a lawsuit between the mother and a son makes it very difficult for this or any court to be unbiased or unprejudiced because of the emotional issues involved, and this court has tried to lean over backwards, naturally, to convince itself of what actually took place in view of some of the conflicts in testimony; and certainly in view of the concrete evidence that has been presented to it.'' The chancellor then went on to say that there is a prima facie case of confidential relationship between a mother and a son under such circumstances as we have before us, which immediately places the son behind ''the eight ball'' legally, to prove that everything that was done was done through no efforts of the son and done through no influence being exerted upon the mother. The court then proceeded to adjudicate the case on the question of confidential relationship when confidential relationship had nowhere been mentioned in any of the pleadings or in any of the evidence. The chancellor, so to speak, just reached up into thin air and pulled down this proposition on which to decide the case.

We think the chancellor's idea of the law on confidential relationship was entirely erroneous. In 16 Am. Jur., Deeds, Sec. 40, on page 463, it is said: ''But the fact of the relationship alone does not necessarily prove undue influence. Affection, confidence, and gratitude between

ι parent and a child which inspire a gift from one to the
ther will not render the gift voidable, unless some im-
proper influence has been so used as to confuse the judg-
ment and control the will of the donor."

In 26A C. J. S., Deeds, Sec. 193, in the para-
graph on Parent and Child at pages 46 and 47, it is said:
"As between parent and child the parent is presumed
to be the dominant party, and hence no presumption that
a deed from a parent to a child was the product of fraud
or undue influence arises merely from the relationship,
and this rule applies to a conveyance by a parent to a
foster child. Fraud or undue influence in the exe-
cution of the deed to the child must be proved, and the
burden of proof of the invalidity of the deed on account
of fraud or undue influence by the child is on the person
who assails it."

To substantially the same effect is 26 C. J. S.,
Deeds, Section 64, on the subject of Parent and Child, at
page 777: "A confidential relationship does not neces-
sarily arise from the relationship of parent and child;
and in determining the validity of deeds from parent to
child the existence of undue influence depends on the
facts and circumstances of each particular case."

In this case there was not one word of proof
that Clarence Olmstead was the dominant party. In fact
the record shows from the testimony of the children other
than Clarence that the mother had money and handled it
herself without advice from anyone at the time this deed
was made. And there is not one hint in the entire evi-
dence in this case that she ever relied on Clarence to
attend to her business. We think it would be a terrible
rule to hold that any conveyance from a parent to a child
is void merely by reason of the relationship. The fact
in this case is that the complainants evidently started
out on one theory and at the conclusion of the evidence
shifted their sails and argued for a decree on an entirely
different theory. The nearest case on which the appel-

lees rely is Bourn v. Bourn, 163 Miss. 71, 140 So. 518, but the facts in that case are altogether different. Tha case involved a deed from a mother to her son in which the evidence amply established that the son occupied a very close fiduciary relationship to his mother; the proof further showed in that case that there was no independent consent on the part of the mother and that she did not know that she was making a deed, but thought she was making a will. There, there was abundant evidence produced to support the contention of the mother on the claim of fiduciary relationship and on the proposition of her having no independent advice. In the case at bar Mrs. Olmstead requested Clarence to go to Meridian and bring the lawyer out to see her, and he did as he was requested. When they arrived at home Lura was not there and Mrs. Olmstead told the attorney that she did not want to go into any details about the deed until Lura got there, but there is no hint that Clarence or Lura either one made any suggestion whatsoever to Mrs. Olmstead as to what the deed should contain. When Lura did get there, the mother then proceeded to give the lawyer the details of what she desired to do, and they even went out and she showed him the exact plot of land which the house stood on and which she desired to convey. She herself insisted that the deed should contain the very provision hereinabove quoted and he advised her that such a provision was unnecessary but that since she wanted it that way he would fix it that way. The lawyer in question is a very highly respected member of the bar and he went back to his office and prepared the deed in the next day or two, and the mother then came to his office, having requested Clarence to carry her there, and she executed the deed before a notary public in the same building. There is no question that she was a good business woman, had money of her own, the exact amount of which does not appear, and she specifically limited the conveyance to a life estate for Clarence and Lura with the remainder to her heirs at law, and she retained

about 78 acres of land adjoining, which were not included in the deed.

For the reasons given the decree of the lower court must be reversed and judgment rendered here in favor of the appellants upholding the validity of the deed.

Reversed and judgment here for appellants.

*McGehee, C. J.*, and *Lee, Kyle* and *Holmes, JJ.*, concur.