MANNING, et al. *v.* HAMMOND

No. 40891 November 3, 1958 106 So. 2d 51

*Jones* & *Stratton,* Brookhaven, for appellants.

*J. P. Patterson, R. G. Turnage,* Monticello, for appellee.

HOLMES, J.

The appellants, who are heirs at law of Evan Lenoir, deceased, brought this suit in the Chancery Court of Lawrence County against the appellee, Savanna Hammond, seeking to have set aside and cancelled a certain deed dated October 26, 1955, executed by Evan Lenoir to Savannah Hammond and conveying 120 acres of land in Lawrence County. It was charged in the original bill that at the time of the execution of the deed, the grantor was mentally incapacitated to execute the same, and further that the deed was procured as the result of fraud and undue influence practiced upon the said Evan Lenoir by the said Savannah Hammond.

The defendant, Savannah Hammond, answered the original bill, denied that a confidential relationship existed between her and Lenoir at the time of the execution of the deed in question, denied the alleged mental incapacity of Lenoir, and denied that said deed was procured by her through fraud and undue influence practiced upon Lenoir.

The chancellor, after a full hearing, found from the evidence that a confidential relationship existed between Lenoir, the grantor, and Savannah Hammond, the grantee, at the time of the execution of the deed in question, but further found from the evidence that the defendant, Savannah Hammond, had met the burden of proof devolving upon her to rebut the presumption of the deed's invalidity arising out of the confidential relationship of the parties, and he thereupon dismissed the original bill, and from his decree of dismissal this appeal is prosecuted.

The sufficiency of the evidence to support the chancellor's finding that a confidential relationship existed between the parties to the deed is not brought into question on this appeal and we do not pass upon that question and it is not necessary that we do so in view of the conclusion which we have reached. We may say, however, that we question the sufficiency of the evidence to establish such confidential relationship and we do not want to be understood as approving the same. ■■ ■ Broadly speaking, a confidential relationship exists where a trust is reposed on the one side and a dominant influence is exercised on the other. 26 C. J. S., Deeds, p. 772. The proof fails to show that Lenoir reposed any trust in the appellee with respect to the handling or disposition of his property or the transaction of his business or business affairs, and fails to show that the appellee exercised a dominant influence on Lenoir with respect to his property and the disposition thereof or the transaction of his business or business affairs.

Assuming the correctness of the chancellor's finding that a confidential relationship existed between the parties, the appellants contend that the evidence is insufficient to support the chancellor's finding that the appellee had met the burden of proof to overcome the presumption of the deed's invalidity arising by reason of the existence of a confidential relationship between the grantor and the grantee in the deed. In passing upon this contention, we review briefly the essential facts as disclosed by the proof.

Evan Lenoir was an elderly negro man who had lived in Lawrence County all of his life. During his lifetime he had accumulated land and money of substantial value. He was something over 90 years of age when he died. He had never married and lived alone until his home burned in November 1954. He sustained burns in the fire which necessitated his hospitalization for two or three days. Upon his discharge from the hospital he

went to the home of Ida Manning, one of the appellants, where he stayed for a few days, and was then taken to the home of Hattie Smith on a Saturday evening and put out there, and on Sunday following, he was carried to the home of Avis Mae Manning, and then later taken to the home of Savannah Hammond, who, with her husband Mose Hammond, lived on a 40 acre tract belonging to Evan Lenoir. There he was ministered to and cared for by Savannah and Mose Hammond until his death on or about November 2, 1955. On January 31, 1955, he conveyed to Savannah Hammond the 40-acres of land on which he was then living with Savannah and Mose Hammond. The validity of this deed is not questioned and it is not here involved.

Lenoir handled his own business and business affairs and was considered a good business man. He was mentally capacitated to the date of his death and was a man of strong will. In October 1955, he sent word to an attorney to prepare a deed conveying to Savannah the 120 acres of land here involved. The deed was prepared and returned to Lenoir. Lenoir then sent for an officer to come and take his acknowledgment to the deed. The officer, Mr. Lunn Turner, Circuit Clerk of Lawrence County, finally came to take the acknowledgment. Lenoir signed the deed under date of October 26, 1955, in the presence of Mr. Turner, the Circuit Clerk, and in the presence of several of his friends and relatives, including his brother. He then acknowledged the deed and it was delivered to Savannah. Rudolph Manning, a nephew of Lenoir, testified that Lenoir knew what he was doing when he signed the deed. Mr. Turner, the Circuit Clerk who took the acknowledgment, testified that he talked to Lenoir about the deed and asked him if he wanted it read to him and Lenoir told him he did not but that he knew what was in it and wanted to sign it. Mr. Turner further testified that Lenoir knew what he was doing when he signed the deed.

There are some inconsistencies and discrepancies in the testimony but the fact as to the mental capacity of Lenoir at the time he executed the deed and the fact that he was acting independently and of his own free will were abundantly established by the evidence. The proof shows affirmatively that the idea of conveying the land to Savannah Hammond originated in the mind of Lenoir and that in executing the deed he was acting independently and of his own free will and was the dominant spirit in the transaction. The proof further shows that the execution of the deed by Lenoir was not suggested or solicited by Savannah, and that Savannah never by any act or suggestion or solicitation or persuasion undertook to influence Lenoir to convey the property to her.

 The legal principles applicable to the facts of this case are well established. In 26 C. J. S., Deeds, p. 749, Section 58, it is said: ''Deeds between persons sustaining a fiduciary or confidential relationship will be closely scrutinized for fraud or imposition, and where the dominant person takes advantage of such relationship and by fraud, fraudulent misrepresentation, or concealment procures the execution of a deed by the latter, the instrument may be set aside.''

In Hickey v. Anderson, 210 Miss. 455, 49 So. 2d 713, the Court said: ''It is well established in Mississippi and elsewhere that where a confidential relationship is shown to exist between parties to the deed, and where the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises a presumption of undue influence, or, as is sometimes said, a deed is prima facie voidable in such cases.''

In Gillis v. Smith, 114 Miss. 665, 75 So. 451, and in Burnett v. Smith, 93 Miss. 566, 47 So. 117, this Court held that ''there can be no undue influence unless it is such as to take away the free agency of the grantor.'' In Burnett v. Smith, supra, the Court said: ''Not every influence is undue, and undue influence cannot be predi-

cated of any act unless free agency is destroyed, and that influence exerted 'by means of advice, arguments, persuasions, solicitation, suggestion, or entreaty is not undue, unless it be so importunate and persistent, or otherwise so operate, as to subdue and subordinate the will and take away its free agency. Nor is influence ordinarily considered undue which arises out of sympathy, kindness, attention, attachment or affection, gratitude for past services, desire of gratifying the wishes of another or of relieving distress, claims of kindred and family or other intimate personal relations, love, esteem, social relations, prejudices, or flattery.' "

Applying the foregoing principles to the case at bar, the record may be searched in vain for evidence of undue influence exercised by the appellee over the deceased, Evan Lenoir. It abundantly appears from the evidence that at the time of the execution of the deed Lenoir was in full possession of his mental faculties and knew what he was doing and what he wanted to do, and that his free agency in the transaction was not taken away, and that he was the dominant influence in the transaction and acted independently. Of course, he had the right to dispose of his property as he desired. In the case of Cresswell v. Cresswell, 164 Miss. 871, 140 So. 521, the Court held that "persons of sound mind excepting those under twenty-one years and those who have been overreached must abide the consequences of their solemn and deliberate acts in executing deeds." And the Court held that equity cannot require cancellation and recision unless it appears that the deed was procured through fraud or undue influence.

In the recent case of Olmstead v. Olmstead, 103 So. 2d 399, which is analogous in some respects to the case at bar, the Court, in refusing to cancel a deed, said: "In this case there was not one word of proof that Clarence Olmstead was the dominant party. In fact, the record shows from the testimony of the children other than Clar-

ence that the mother had money and handled it herself without advice from anyone at the time this deed was made. And there is not one hint in the entire evidence in this case that she ever relied on Clarence to attend to her business.'' So in the case at bar there is no testimony that Lenoir relied upon the appellee for business advice or that she was the dominant spirit in the transaction resulting in the execution of the deed, or that she requested the execution of the deed, or suggested the same, or solicited the same, or in any other manner was active in efforts to procure the execution of the deed to her. In fact, the proof is to the contrary.

We are accordingly of the opinion that the chancellor was abundantly supported by the evidence in his finding that the appellee had met the burden of proof devolving upon her to rebut the presumption of the deed's invalidity arising by reason of a confidential relationship between the parties. We find no error, therefore, in the action of the chancellor in dismissing the original bill.

It is further contended by the appellants that the chancellor erred in sustaining the objection of the defendant below to testimony by Savannah Hammond and Bob Jenkins with respect to matters which transpired during the lifetime of Lenoir. This suit was by the heirs of Lenoir, a deceased person. The complainants below called as an adverse witness the defendant Savannah Hammond, and also later called Bob Jenkins, a brother of the deceased, as a witness for the complainants. The defendant objected to testimony by both Savannah Hammond and Bob Jenkins as to matters arising during the lifetime of the deceased upon the ground that they were heirs of the deceased and that their testimony would tend to establish a claim or defense against the estate of a deceased person, and that they were incompetent to testify under Section 1690 of the Code of 1942. It is to be noted that these witnesses were called by the complainants

who were the heirs of the deceased Lenoir, and, therefore, represented the estate of the deceased. It has been well established by the decisions of this Court that a party against whom a claim is asserted waives incompetency by introducing and examining the claimant as a witness. Birchett v. Hundermark, 145 Miss. 683, 110 So. 237; Waldauer v. Parker, 141 Miss. 617, 106 So. 881; Fant v. Fant, 173 Miss. 472, 162 So. 159. We think that the chancellor was clearly in error in sustaining the objection to the testimony of these witnesses insofar as it pertained to transactions which transpired during the lifetime of the deceased and in excluding the testimony.

In the case of Birchett v. Hundermark, supra, the Court, considering this statute, said: "Moreover, the prohibition of the statute is for the protection of a party against whom a claim against the estate of a decedent is or may be asserted, may be waived by him, and is waived as to a particular witness having such a claim when he himself introduces and examines the witness."

In the case of Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, the Court said: "The policy of the statute is to close the mouth of the living because death has sealed the lips of the dead." In the case at bar, the representatives of the estate waived the right to have the lips of the living sealed. This is not a case where the claimant offers to testify in the absence of a waiver by the party against whom the claim is asserted. This is a case wherein the party against whom the claim is asserted offers the testimony of the living witness and thereby waives the incompetency of such witness.

While we are of the opinion that the chancellor was in error in holding these witnesses to be incompetent and in excluding their testimony, we cannot consider such error because it does not appear in the record what was proposed to be proved by these witnesses, and we are, therefore, not in a position to say whether the offered testimony would be material and relevant or whether

its exclusion constituted prejudicial error. In the case of G. M. & N. R. R. Co. v. Willis, 171 Miss. 732, 157 So. 899, the Court said:

"The rule has long been established in this jurisdiction that a judgment will not be reversed for error unless it be shown by the record that the error was actually prejudicial and harmful to the rights of the complaining party. Mississippi Utilities Co. v. Smith, 166 Miss. 105, 117, 145 So. 896; Goins v. State, 155 Miss. 662, 667, 124 So. 785. Consonant with that rule, when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case, and whether its exclusion was actually harmful and prejudicial to the officer." This Court approved this rule in the case of Martin v. Gill, 182 Miss. 810, 181 So. 849, holding that where there was no statement in the record of the answers or testimony which would have been given if the witness had been permitted to answer, the alleged error in excluding the testimony could not be considered by the Supreme Court. To the same effect is Griffith's Mississippi Chancery Practice, 2d ed., Section 588, page 609. We are accordingly of the opinion that the error of the court in excluding said testimony cannot be considered on this appeal because the record fails to show that the same was prejudicial.

It follows from the views hereinbefore expressed that the decree of the court below should be and it is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee,* and *Ethridge, JJ.,* concur.