183 So.2d 900 (1966)
Harry M. LIPSON, Individually, and Executor of the Estate of Morris Lipson, Deceased, and Alma S. Lipson, et al.
v.
David LIPSON.
No. 43810.
Supreme Court of Mississippi.
March 14, 1966.
Lomax B. Lamb, Jr., Marks, Wise, Smith & Carter, Jackson, for appellants.
*901 Ben M. Caldwell, Marks, Holcomb, Curtis & Connell, Clarksdale, for appellee.
INZER, Justice.
Appellee, David Lipson, filed suit in the Chancery Court of Quitman County against Harry M. Lipson, Sr., individually, and as executor of the Estate of Morris Lipson, Deceased, and against Alma Lipson, Miriam Lipson and Harry M. Lipson, Jr., seeking to require the executor to make discovery of the assets of the Estate of Morris Lipson, and to set aside certain transactions between Morris Lipson and the defendants.
The bill of complaint alleged that David Lipson was the oldest child of Morris Lipson, Deceased, and that he was one of the beneficiaries under the will of Morris Lipson, and that the will had been duly probated in the Chancery Court of Quitman County. The defendant, Harry M. Lipson, Sr., was the only other child of Morris Lipson, Deceased, and he was named as executor of the last will and testament of Morris Lipson, to serve without bond and without accounting to the court for his actions. The bill further charged that the will was executed in 1951, and its contents were known to Harry M. Lipson, Sr., and that thereafter he set about to make the bequest to David Lipson ineffective. The bill charged that a confidential and fiduciary relationship existed between the decedent and Harry M. Lipson, Sr. and Harry M. Lipson, Jr., son and grandson of decedent, and by undue influence, domination and control, that the parties so maneuvered Morris Lipson during his lifetime to cause him to pass title to his property in joint tenancy with the right of survivorship to the defendants; that because of undue influence and because of decedent's mental incapacities, the inter vivos gifts to the various defendants were void. The bill of complaint also charged that Harry M. Lipson, Sr. had probated a claim against the estate for $12,000; that his claim was allegedly based upon a promissory note; and that the claim had not been probated in accordance with the statutes. The prayer of the bill was that a temporary injunction be issued restraining the defendants from disposing of any of the property in question; and that the executor be required to post bond and file an inventory of the assets; that the title of the defendants to the property in question be vacated and annulled; and the property be declared to be the property of the estate; further, that the probated claim of Harry M. Lipson, Sr. be disallowed and that complainant be awarded a decree for his interest in the assets of the estate.
The defendants, appellants here, answered and denied the material allegations of the bill relative to the undue influence and mental incapacity. The answer of Harry M. Lipson, Sr. exhibited an inventory of all the gifts made by the decedent in his lifetime and all of the property held in joint tenancy with the right of survivorship. The answers of the various defendants also set up demurrers to the bill of complaint. These demurrers were properly overruled.
After the defendants had answered, appellee propounded interrogatories to the defendant, Harry M. Lipson, Sr. These interrogatories were propounded under the provisions of Mississippi Code Annotated section 1712 (1956). The interrogatories consisted of fifty-seven questions dealing with matters that occurred between Harry M. Lipson, Sr. and Morris Lipson during the lifetime of Morris Lipson. The interrogatories were answered by Harry M. Lipson, Sr. and are a part of the record in this case.
A trial was had upon the issue involved, and after taking the matter under advisement, the chancellor rendered a written opinion which is part of the record in this case. The chancellor found that the decedent was mentally competent during all times material to the issues involved; however, he did find that a confidential and fiduciary relationship existed. His finding in this regard is as follows:
The facts and circumstances in this case clearly make out a fiduciary or *902 confidential relationship, as that relationship is defined in the cases hereinafter referred to. There was a close family relationship, it appearing that M. Lipson had considerable affection for his son Harry and Harry's wife, children and grandchildren. The 1951 will favored Harry, referring the `love, affection and generosity of my son Harry M. Lipson, Senior.' During the period of time in question, M. Lipson lived on the same lot with his son, in a house provided by his son, and apparently ate most of his meals with the son and his family. Harry M. Lipson was named executor of the 1951 will, without bond or accounting. The alternate executor named was Harry M. Lipson, Jr., also without bond or accounting.
At the time of M. Lipson's death, most of his funds were invested in common stocks. Harry Lipson recommended stock purchases to be made, ordered all of them, instructed the broker as to form of registration, and paid for them. Apparently most of the purchases were made from the proceeds of checks payable to Harry Lipson himself. When a store building was purchased in 1959, in the name of M. Lipson and Harry Lipson as joint tenants, Harry Lipson carried on the negotiations and gave all instructions to the attorney for preparation of the deed. Prior to his death, M. Lipson converted both of his bank accounts to joint accounts with Harry M. Lipson, Jr. Harry Lipson looked after the insurance on M. Lipson's building. As early as 1952, Harry Lipson, Jr., handled the rental transaction by which a part of the store of M. Lipson was rented for a jewelry business. The 1951 will was kept in Harry Lipson's safe from a time soon after its execution until the death of M. Lipson; the Answer of Harry M. Lipson, filed September 28, 1962, admits that he knew of the execution of said will and of its contents. Harry Lipson kept all of M. Lipson's stocks and bonds in his safe for at least two years prior to the death of M. Lipson. All of M. Lipson's mail came through Harry Lipson's post office box. Harry Lipson opened and recorded all dividend checks received by M. Lipson, and kept a record of them for income tax purposes.
The recorded cases present a wide range of facts and circumstances which have been held to constitute or not constitute fiduciary relations, or confidential relations as they are sometimes called. Each case of course must be decided on its own facts. However, it seems to me that we have facts here which would satisfy any definition of fiduciary relationship. The decedent was substantially dependent upon Harry M. Lipson, and to a lesser degree on Harry M. Lipson, Jr., in his personal life, in his business affairs, and particularly in connection with the investment of his savings. He apparently had the utmost confidence in both Harry M. Lipson and Harry M. Lipson, Jr. Quoting the Wofford case [Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188], cited below, `it was a relation in which confidence was reposed, by one, and the influence which naturally grows out of such confidence was possessed by the other.'
Clearly the confidential relationships with Harry M. Lipson and with Harry M. Lipson, Jr. would affect the gifts to other members of their family. Roper v. Lenois [243 Ala. 583], 11 So. (2) 361, (Alabama, 1943); Annotation, 96 A.L.R. 613.
This finding indicates that the chancellor was of the opinion that the evidence established that Harry M. Lipson, Sr. and Harry M. Lipson, Jr. were the dominant parties in their relationship with Morris Lipson; having so found, the chancellor was correct in applying the law announced.
The chancellor then held that since a fiduciary relationship existed that the burden *903 of proof was upon the appellants to show that the transactions were free from undue influence. He found that there was no evidence to show that the decedent had the benefit of any independent advice. He then made the following finding relative to the independent consent and action of the decedent:
Assuming, as I do, that a showing of independent advice is not absolutely essential, what other `clear evidence of good faith, full knowledge, and independent consent and action' do we have in this case? I have considered M. Lipson's independent spirit; his unquestioned competency during most of the period in question; his reasons for favoring Harry's family; the possible reasons for David being in disfavor; the long period of time over which these events occurred, during which time the donor was not confined or sheltered from contacts with third persons; his statements to third persons as to stock purchases for the benefit of the grandchildren. All these circumstances tend to support the gifts in question, but after considering them and all of the other evidence offered, I cannot say that the evidence is clear (1) that M. Lipson knew and clearly understoof (sic) the legal effect of the joint tenancies being created; or (2) that he realized and intended that practically all of his property was being converted into such form of ownership, and that the son David was being completely disinherited; or (3) that he formed such intention independently, and not as a result of any influence, suggestion, encouragement or information coming from Harry M. Lipson or Harry M. Lipson, Jr.
The chancellor then determined the items in question that were to be included as assets of the estate. His finding is as follows:
The items hereinafter set our (sic) are held to have been owned by M. Lipson at the time of his death, and are a part of the estate passing under the residuary clause of his will:
(a) An undivided one-half interest in the store building purchased in 1959, the other one-half being owned by Harry Lipson. Harry Lipson shall make a complete accounting of all funds of each owner which have gone into the purchase and maintenance of said building, and of all income received from the building.
(b) All stocks listed in Exhibits C, D and E to the Amendment to Answer of Harry M. Lipson; also any other stocks and bonds purchased with funds of M. Lipson from and after February 19, 1951.
(c) The two bank accounts in Citizens Bank & Trust Co.
(d) The M. Lipson stock of merchandise, as inventoried in Exhibit G to the Amendment of Harry M. Lipson.
In addition to the above items, Harry M. Lipson shall make an accounting of the checks which were made payable to him out of the M. Lipson savings account, and reconcile such accounting with the purchases of stocks for M. Lipson. Also, he shall make an accounting of the checks upon said account payable to Kohlmeyer & Company. As Executor he will of course account for any and all other property of M. Lipson which has come into his hands or of which he has knowledge.
There were checks from the savings account in favor of Harry M. Lipson, Jr. in the total amount of $7500.00 and in favor of Miriam Inez Lipson in the amount of $4000.00. Also, four refund checks from DuPont & Co., in the amounts of $2500.00 each, were indorsed respectively to Harry A. Lipson, Miriam Inez Lipson, Dorothy K. Lipson, and Harry M. Lipson, Jr. Apparently all of these checks were intended as gifts, were either signed or indorsed *904 by the deceased himself, and were paid and delivered to the recipients. Although there is some difficulty in clearly distinguishing between these and the items first listed above, it is my opinion that they should be treated as completed gifts, and not included in the decedent's estate. It might be noted that two of the recipients of the DuPont checks are not parties to this suit.
The probated claim of Harry Lipson upon the note executed by M. Lipson will be disallowed, both because a certified copy of the note was not filed upon withdrawing the original, and because this transaction is affected by the fiduciary relationship discussed above.
A decree was entered in accordance with this opinion. From this decree, appellants have prosecuted this appeal. Appellee, David Lipson, has cross-appealed from that part of the decree which held that certain transactions constituted valid and complete gifts by Morris Lipson during his lifetime.

I

ON MOTION TO DISMISS
After appellants had filed their briefs in this Court, appellee filed a motion to dismiss the direct appeal. As grounds for such a motion, appellee alleges: (1) that appellants have not filed an appeal bond as required by statute and as directed by the decree of the court which allowed a joint appeal with supersedeas appeal bond in the penal sum of $30,000; (2) that appellants have split their appeal. Appellants, Harry M. Lipson, Sr., Alma Lipson and Harry M. Lipson, Jr., answered the motion, and to their answer attached another supersedeas bond and requested that it be accepted as a substitute for the bond previously filed. Appellant, Miriam Lipson, who is represented by separate counsel on this appeal filed a separate answer to the motion to dismiss and also filed a motion that she be allowed to amend her original bond by substituting a new bond which was attached as an exhibit.
The record reflects that the final decree was entered in the trial court on the ninth day of February, 1956. This decree recites with reference to an appeal, the following:
The Defendants having moved the Court for an appeal in this cause, the same is hereby granted; however, should the Defendants desire to appeal with supersedeas, then the supersedeas appeal bond is hereby set by this Court in the penal sum of $30,000.00 The Complainants herein having moved this Court for cross-appeal, the same is hereby granted.
Thereafter on March 3, 1965, Harry M. Lipson, Sr., as an individual and as executor of the Estate, and Alma S. Lipson filed an appeal bond in the penal sum of $30,000. This bond was signed by Harry M. Lipson, Sr. and Alma S. Lipson as principals. The sureties were Harry M. Lipson, Jr. and Dorothy K. Lipson. On the same date appellant, Harry M. Lipson, Jr., and Miriam Lipson filed an appeal bond in the amount of $30,000. The sureties on this bond were Harry M. Lipson, Sr. and Alma S. Lipson. The language of the bonds did not comply with the statute in all respects in regard to an appeal with supersedeas. Appellee contends that the action of appellants relative to filing separate appeal bonds amounts to and was an attempt to circumvent the statute relative to providing sureties on their appeal bonds. This, the appellants deny and contend that under the circumstances in this case their procedure was proper. We do not think that appellants could properly become sureties for each other by executing two appeal bonds instead of one as required by statute. It is provided by statute that when a final judgment or decree is rendered against several parties, any one of the parties may appeal by executing the required bond. If any or all of the other parties desire to appeal, they may do so by joining in such appeal, and this they may do without executing an additional bond. Mississippi Code Annotated section 1959 (1956) provides that all irregularities in the application for appeal, and the *905 bond, may be cured by amendment. We have construed this section liberally in favor of allowing appeals to reach final judgment on their merits. Therefore we are of the opinion that the two bonds should be considered as one appeal bond, and when we do this, we find that there is only one surety thereon. We have held in a number of cases that where an appeal bond was timely filed, as was done here, with only one surety, that this Court may grant leave to perfect the defective appeal bond after the expiration of the time for taking an appeal. The bonds now tendered are in the statutory language for appeals with supersedeas, with proper sureties, and have already been approved by the clerk of the court below. Therefore we are of the opinion that the motion of appellants to amend the bonds filed by substituting the amended supersedeas bonds is well taken and should be sustained. The bonds attached to their motions will be considered as an amendment to the bonds originally executed. This will result in two good and sufficient supersedeas appeal bonds for $30,000 each, but since the liability of the parties is separate and not joint, this action will in no wise create any complications. Walters v. Fine, 232 Miss. 494, 99 So.2d 669, 95 So.2d 229 (1958); Snipes v. Commercial & Industrial Bank, 225 Miss. 345, 82 So.2d 895, 83 So.2d 179 (1955); Williams v. J.E. Walton & Son, 202 Miss. 641, 32 So.2d 131 (1947); Gericevich v. Bonham, 177 Miss. 423, 170 So. 680 (1936); Lovett v. Harrison, 162 Miss. 814, 137 So. 471 (1931); Purity Ice Cream Co. v. Morton, 157 Miss. 728, 127 So. 276 (1930); Wills v. Howie Bros., 109 Miss. 568, 68 So. 780 (1915).
The other ground urged for dismissal of this appeal is that the appellants have split their appeal. The facts do not show a split appeal. The appellants all joined in a notice to the reporter to transcribe her notes and designated the record to be made up in this case. Although they did then file separate appeal bonds, there is only one record before this Court, and actually only one appeal. It so happens that on this appeal one of the appellants is represented by separate counsel, and has filed a separate brief in this Court. This is not uncommon, and is permissible so long as the combined briefs of the appellants do not violate our rules relative to length. For the reasons stated, we are of the opinion that the motion to dismiss the direct appeal is not well taken, and should be and is overruled.

II

ON THE MERITS
We will first address ourselves to the error assigned relative to the action of the chancellor in disallowing the claim probated by Harry M. Lipson, Sr., against the Estate of Morris Lipson, Deceased. The record shows that after the will of Morris Lipson was probated Harry M. Lipson, Sr. attempted to probate a claim against the Estate for $12,000 based upon a promissory note alleged to have been executed by Morris Lipson in his lifetime to Harry M. Lipson, Sr. The claim as probated and allowed by the clerk did not have the original note attached thereto, but instead, had what purported to be a copy of the note attached. The original note and a copy thereof were exhibited to the clerk who examined the same. The creditor then withdrew the original and left the copy with the clerk. The clerk did not make a certificate that the copy was a true copy of the original as exhibited to him. After the date for probating claims had expired, David Lipson, one of the beneficiaries, contested the claim. The factual situation before us in this case is the same as was before this Court in the case of Merchants & Manufacturers Bank of Ellisville v. Fox, 165 Miss. 833, 147 So. 789 (1933). This Court held in that case that the failure of the clerk to attach his certificate that the copy was in fact a true copy, was fatal and after the time for probating claims had expired, it was too late to amend by allowing the clerk to make a proper certificate. The Court speaking through Justice Griffith said:
It is regrettable that a just claim, especially when held by a bank which *906 is in a large sense a trustee for its numerous depositors, should have to be rejected for such reasons as above stated. But the substance of the law on this subject is mandatory. It is easy with proper care to comply with the statute, and its mandatory observance saves many estates of being plundered by fictitious claims. There is perhaps no chancellor who has seen long service in this state who has not witnessed attempts to swindle estates by fabricated claims. For this reason the statute must be upheld in all its requirements although an honest creditor sometimes severely suffers thereby. In such a large claim as this, the bank should have had its attorney to attend to this important matter, and thus the loss would have been avoided. (165 Miss. at 840, 147 So. at 790)
This decision has been followed by this Court many times, and appellant, Harry M. Lipson, Sr., admits this this decision is controlling in this case, unless the Court should now determine that the statute should be construed differently. This he contends we should do; however, we are of the opinion that the same basic and fundamental principles, upon which the decision was based, exist now as they did then. This has been the law for many years, and the legislature in its wisdom has not seen fit to change the law in this regard, and we see no sound reason for this Court to construe the statute any differently now. The action of the chancellor in sustaining the contest and disallowing the claim was correct.
The next question to be considered is the question of whether the trial court was in error in sustaining the objections to the testimony of appellants, Miriam Lipson, Alma Lipson and Harry Lipson, Jr. Appellants offered Mrs. Miriam Lipson as a witness, and her testimony was objected to as being in violation of Mississippi Code Annotated section 1690 (1956). Appellants did not offer her testimony to prove her claim against the Estate, but offered it to establish the claims of the other defendants against the Estate. The chancellor sustained the objection to her testimony, and also extended his ruling to cover the testimony of the other two defendants. Counsel for appellants then dictated into the record an offer of proof, and set out what he expected to prove by these witnesses. We think that under the facts in this case that the testimony offered was competent, not for the reason that it was to be confined to matters tending to prove the claims of the other defendants, but because the appellee, by making one of the defendants a witness, had waived the privilege afforded by the statute as to the other defendants. We have heretofore pointed out that interrogatories were propounded to Harry M. Lipson, Sr. under the provisions of section 1712 of the Code. By this means, appellee made Harry M. Lipson, Sr. a witness and used the testimony gained by the interrogatories as a part of the appellee's case. Of course, under the law, appellee had a right to force the defendant, Harry M. Lipson, Sr., to testify, but when he was forced to testify, the privilege afforded by the statute was waived. Appellee had the right to waive the privilege on behalf of the Estate since his suit was seeking to recover assets for the benefit of the Estate. However, when appellee waived the privilege as to Harry M. Lipson, Sr., he waived the privilege relative to the testimony of the other defendants. In Coney v. Coney, 249 Miss. 561, 163 So.2d 692 (1964), this Court speaking through Justice Rodgers said in this regard:
Appellant's contention that the court erred in permitting appellees, Allen, Albert and Lonnie Coney to testify to establish their defense against the estate of the deceased `Coney Brothers,' Van, John L. and James Coney is based upon § 1690, Miss. Code 1942, the pertinent part of which is as follows: `A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any *907 claim he has transferred since the death of such decedent. * * *'
We are of the opinion, however, that the appellants cannot raise an objection based upon the foregoing code section for the reason that they offered two brothers of the deceased M.M. Coney to prove the claim of the `Coney Brothers' against the alleged trust estate said to have been wrongfully transferred by M.M. Coney to his sons.
The rule appears to be well-established that the examination of one witness incompetent under the dead man's statute operates as a waiver of incompetency of adverse witnesses, at least where the testimony of such adverse witness is offered after the examination of the first witness, and as to matters testified to by such first witness. Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 33 A.L.R.2d 1431; Anno. 33 A.L.R.2d 1441. (249 Miss. at 573, 163 So.2d at 697-98)
See also Manning v. Hammond, 234 Miss. 299, 106 So.2d 51 (1958); Fant v. Fant, 173 Miss. 472, 162 So. 159 (1935); Birchett v. Hundermark, 145 Miss. 683, 110 So. 237 (1926).
The reason for this rule is apparent. A party representing the estate of a deceased person may protect the estate by invoking section 1690, but such person may, if he so desires, waive the privilege afforded by the statute. Having waived the privilege as to one witness, he cannot then avail himself of the protection of the statute as to other witnesses. To hold otherwise, would allow the representative of an estate to select the witnesses whose mouths he would open and those whose mouths he would close. Such action would give an unfair advantage to the representative of the estate and could result in a miscarriage of justice. Therefore the testimony offered was competent because of the waiver, and the trial court was in error in sustaining appellee's objection thereto. We have examined the offer of proof as shown by the record, and it appears to be material as to the issues involved. For this reason we think the evidence of these witnesses should be considered by the chancellor. Of course, in considering the evidence of these witnesses the chancellor is at liberty to give only such weight and credit thereto as he may deem it entitled. For this reason, we are of the opinion that this case should be reversed and remanded for a new trial, as to all matters on direct appeal, except the disallowance of the probated claim heretofore discussed.
On cross-appeal appellee and cross-appellant contends that the chancellor was in error in holding that the gifts by Morris Lipson, Deceased, to Harry M. Lipson, Jr. in the amount of $7,500 and to Miriam Lipson in the sum of $4,000, together with checks of $2,500 to each of them, were completed gifts by Morris Lipson in his lifetime. We have carefully examined the evidence relative to this finding of the chancellor, and we are of the opinion that it is supported by the evidence. The record shows that Morris Lipson was fully mentally competent at the time these gifts were made, and he had the right to make them so long as they were freely and voluntarily made. The chancellor found from the evidence that they were completed gifts and were not affected by the fiduciary relationship. It is true that there is some difficulty in clearly distinguishing between these gifts and the other gifts involved; however, the chancellor was able to do so, and we cannot say that he was in error in so doing. For this reason, this case should be affirmed on cross-appeal.
Motion to dismiss overruled; affirmed in part and reversed and remanded for a new trial on direct appeal; and affirmed on cross-appeal.
GILLESPIE, P.J., and RODGERS, BRADY and SMITH, JJ., concur.