This is an appeal from the Chancery Court of Humphreys County wherein the chancellor found that two certificates of deposit issued by the Citizens Bank Trust Company of Belzoni were the property of Herbert Moore at the time of his death and should be included among the assets of his estate.
Feeling aggrieved by the court's ruling and decree, the appellants appeal.
The two certificates of deposit were issued by the Citizens Bank Trust Company of Belzoni, Mississippi. Certificate of deposit No. 1192 was issued by the Bank on February 1, 1970, in the principal amount of $1,178.39 payable to Herbert Moore P.O.D. Pinkie Rand — Ethel Mae Battle. The chancellor found that this certificate was in the possession of Herbert Moore at the time of his death and was an asset of his estate.
Pinkie Rand and Ethel Mae Battle did not receive any present interest in the certificate when it was issued. During the lifetime of Herbert Moore, he was the only person who could negotiate the certificate. This, he did not do. In their pleadings, the heirs of Pinkie Rand and Ethel Mae Battle contend that the abbreviation P.O.D. means "Payable on Death," therefore, it is patent "P.O.D. Pinkie Rand — Ethel Mae Battle" was an attempt by Moore to make a testamentary disposition of the certificate upon his death which failed because, among other things, it was neither in the handwriting of Herbert Moore nor signed by him and did not otherwise conform to Mississippi Code Annotated section 91-5-1 (Supp. 1981) on the execution of wills.Matter of Collier, 381 So.2d 1338 (Miss. 1980); Buchanan v.Buchanan, 236 Miss. 751, 112 So.2d 224 (1959).
The Bank issued certificate of deposit No. 1189 on October 1, 1970, in the amount of $6,618.00 payable to Herbert Moore. During Herbert Moore's lifetime he endorsed his name on the back of the certificate and physically delivered it to Ross Coleman. Coleman was allowed to testify, over objection of the appellee, that he and Herbert Moore were cousins and that Moore had visited him in 1972 and had given him the certificate of deposit No. 1189 with his endorsement on the back thereof. He also testified that Herbert Moore had given him a horse and a truck on an earlier occasion when he left Belzoni. He also testified that Moore had never again mentioned the certificate to him. The validity of Moore's signature on the instrument was not challenged by appellee.
The trial court properly overruled the appellee's objection to the testimony of Ross Coleman, which objection was made on the grounds that it was in violation of the so-called dead man statute, Mississippi Code Annotated section 13-1-7 (1972). Coleman's testimony was competent because the appellee propounded interrogatories to Coleman with reference to the gift of certificate No. 1189 and by so doing made Coleman a witness and thereby waived any privilege that the estate might have had under the dead man statute. The appellee had the right to waive the privilege on behalf of the estate since her suit was seeking to recover assets for the benefit of the estate. Lipson v. Lipson,183 So.2d 900, 906 (Miss. 1966). Taking the deposition of, or serving interrogatories upon, a person who would otherwise be incompetent as a witness under the dead man statute is the equivalent of calling such person as a witness and is a waiver of the witness' incompetency. Lipson, supra; 81 Am.Jur.2dWitnesses § 407 (1976); citing Fant v. Fant, 173 Miss. 472,162 So. 159 (1935).
The certificate claimed by Ross Coleman, No. 1189, was made payable to Herbert Moore and was endorsed in blank on the back by Herbert Moore. The certificate admittedly did not contain the words payable to the "order" of Herbert Moore nor was it payable to "Herbert Moore or bearer." Therefore, it is contended by the appellee that absent the so-called magic language "order" or "bearer" the certificate of deposit was not negotiable in character and *Page 887 
could not be transferred simply by the endorsement of Herbert Moore on the back thereof.
Except for the language "payable to order" or "payable to bearer," certificate No. 1189 contained all of the necessary attributes of a negotiable instrument as required by Mississippi Code Annotated section 75-3-104 (1981).[1] It was signed by the maker, contained an unconditional promise to pay a sum certain in money, and was payable at a definite time. However, although the "order" or "bearer" language did not appear on the face of the instrument, Mississippi Code Annotated section 75-3-805 (1981) allows transfer of this type instrument by proper endorsement. That section provides:
Instruments not payable to order or to bearer.
 This chapter applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this chapter but which is not payable to order or bearer, except that there can be no holder in due course of such an instrument.
When an instrument fails of negotiability because it does not contain words of negotiability, some courts have called it a mercantile specialty and permitted the rules of negotiable instrument law to govern it, except that no holder could be a holder in due course. Other courts have held such an instrument to be only a simple contract, falling outside the purview of the old Uniform Negotiable Instrument Act. However, section 3-805 of the Uniform Commercial Code, codified in this State as section75-3-805, resolves this conflict of authority by adopting the first-stated view. Under section 75-3-805, an instrument, nonnegotiable only because it fails to contain words of negotiability, may be transferred by endorsement and without words of assignment. The liability of the endorsement is governed by the U.C.C. and not by the law of assignments. As stated in the official comment to section 3-805 of the Uniform Commercial Code, it is said:
 In short, the "non-negotiable instrument" is treated as a negotiable instrument, so far as its form permits. Since it lacks words of negotiability there can be no holder in due course of such an instrument, and any provision of any section of this article peculiar to a holder in due course cannot apply to it. With this exception, such instruments are covered by all sections of this Article. (Uniform Commercial Code, Official Text with comments (1972)).
See also W. Hawkland, A Transactional Guide to The Uniform Commercial Code, pp. 474-75 (1964); R. Anderson, Uniform Commercial Code, p. 154 (2nd ed. 1971).
Herbert Moore endorsed certificate No. 1189 in blank on the back thereof and physically delivered the same to Ross Coleman.
Absent proof of the contrary, this creates a presumption of a valid and intentional delivery. Miss. Code Ann. § 75-3-201, §75-3-805 (1981). This presumption was satisfactory proof of an inter vivos gift to Ross Coleman and was not overcome by the evidence. Evidence that the periodic interest payments accrued on certificate No. 1189 continued to be deposited into separate savings accounts belonging to Moore was not sufficient to overcome this presumption. *Page 888 
We are of the further opinion and so hold that, as between the litigants in this case, any interest accruing on certificate No. 1189 from and after Herbert Moore's death is the property of Ross Coleman.
There is no merit in the appellants' contention that the separate savings accounts belonged to them and not the estate.
We are also of the opinion that the chancellor did not abuse his discretion in allowing the original certificate, with the endorsement of Herbert Moore thereon, to be admitted into evidence.
There is no merit in the contention by Ethel Mae Battle and the heirs of Pinkie Rand that Herbert Moore made an inter vivos gift of/or transfer of certificate of deposit No. 1192 to Ethel Mae Battle and Pinkie Rand during his lifetime.
For the foregoing reasons, the decree of the chancery court in holding that certificate of deposit No. 1192 was a part of the estate of Herbert Moore is affirmed; that part of the decree holding that certificate No. 1189 was part of the estate of Herbert Moore is reversed, and such certificate is hereby held and decreed to be the property of Ross Coleman, including all interest accruing after his death, and, that part of the decree holding that the separate savings accounts in the Citizens Bank 
Trust Company of Belzoni was a part of the Estate of Herbert Moore is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, BOWLING and HAWKINS, JJ., concur.
[1] § 75-3-104. (1) Any writing to be a negotiable instrument within this chapter must (a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer. (2) A writing which complies with the requirements of this section is (a) a "draft" ("bill of exchange") if it is an order; (b) a "check" if it is a draft drawn on a bank and payable on demand; (c) a "certificate of deposit" if it is an acknowledgment by a bank of receipt of money with an engagement to repay it; (d) a "note" if it is a promise other than a certificate of deposit. (3) As used in other chapters of this code, and as the context may require, the terms "draft," "check," "certificate of deposit" and "note" may refer to instruments which are not negotiable within this chapter as well as to instruments which are so negotiable.
 *Page 370