BOWLING, Justice,
for the Court:
This appeal involves the attempt to set aside a conveyance of real property executed by the deceased prior to her death. Mrs. Amelia Lott Moreau, a resident of Hancock County, Mississippi, died on July 27, 1980, at the age of 83. On March 11, 1980, Mrs. Moreau executed a deed to her only surviving child, the appellee Hunter I. Peterman, a resident of New Orleans, Louisiana. The appellants, complainants below, are the three children of Mrs. Moreau’s deceased son, Fred J. Peterman. He and Hunter were Mrs. Moreau’s only children. The children’s father had been deceased for a number of years.
Beginning the latter part of 1979, Mrs. Moreau had a very upsetting and depressing life. A great grandson, the son of Fred J. Peterman, Jr. one of the appellants, was killed in an accident; the husband of her granddaughter, one of the appellants, died; on January 26, 1980, Fred J. Peterman, Sr., one of her two sons and the father of appellants, died; and during this period of time Mrs. Moreau suffered a severely injured hip. The evidence is undisputed that all of these occurrences, particularly the death of her son, Fred J. Peterman, threw Mrs. Moreau into a state of deep depression. She was carried to New Orleans and on February 12,1980, taken to the office of Dr. Lelia Angel, an internal medicine specialist. Mrs. Moreau was confined at Tou-ro Infirmary under Dr. Angel’s care for a number of days. According to Dr. Angel, during the first part of this hospitalization Mrs. Moreau was “near comatose and lethargic.” She improved and following her discharge, Dr. Angel saw her again on March 7. Dr. Angel testified that at that time Mrs. Moreau was alert and the doctor described this condition to mean that if Mrs. Moreau was spoken to she would respond and if asked to turn over or take a deep breath, she would respond. At Dr. Angel’s suggestion, Mrs. Moreau was placed in a nursing home where she stayed only a short time and was taken by appel-lee Hunter I. Peterman to his home in New Orleans. During the period of time *128 prior to her death, Mrs. Moreau again was placed in a nursing home, but remained there only a short time before being transferred to appellee’s home again. Dr. Angel last saw Mrs. Moreau on March 24 when she advised placing Mrs. Moreau in a nursing home with close supervision.
At the trial the chancery judge of Hancock County, at the conclusion of appellant’s evidence, excluded that evidence on appellee’s motion and entered a decree for appellee. The chancellor held that a fiduciary or confidential relationship was not shown to exist between Mrs. Moreau and her son Hunter I. Peterman. The chancellor further held affirmatively that appellants did not meet their burden of proving the deed from Mrs. Moreau to appellee to have been secured by misrepresentation or undue influence.
As stated the deed was executed by Mrs. Moreau on March 11, 1980, after she had had the shocks and gone into a deep depression as hereinbefore described and in the physical condition as described. It was executed shortly before a competent physician advised close supervision of Mrs. Mor-eau in a nursing home. Mrs. Moreau was staying in appellee’s home at the time the deed was executed.
There are three different principles of law that require a reversal of this case. These principles have been gone into thoroughly by this Court over many years and we hope that we can set them out in such plain and unmistakable ways that the bench and bar will recognize them in the future as was not done in the case sub judice.
Included in the record of the cause both before the lower court and this Court, are pretrial interrogatories and answers thereto served on appellant Fred J. Peterman, Jr. and included in the record both before the chancellor and this court is a deposition taken of appellant Fred J. Peterman, Jr. by appellee, defendant below, at appellee’s sole instigation. Without going into details, a reading of this deposition shows just about as clear a case of fiduciary and confidential relationship between Hunter I. Peterman and the deceased as could be described. The record coming from the chancery court is not clear as to what happened in regard to the interrogatories and answers thereto and the deposition being in the record. Regardless of this, the situation resulting from these instruments would be the same.
As stated, although the record is rather cloudy, the chancellor was of the opinion that appellant Fred J. Peterman, Jr. could not testify under Mississippi Code Annotated, Section 13-1-7 (1972), which is the well known “dead man’s statute”. In the recent case of Rand v. Moore, 414 So.2d 885 (Miss.1982), we reaffirmed what the cases from this court before indicated for many years. We had a similar situation as we have in the case sub judice, where the testimony of a witness Coleman was denied under the “dead man’s statute” after the party, whom the statute gave a privilege to, secured the deposition and answers to interrogatories of Coleman. We stated in that case clearly and unmistakably the following:
The trial court properly overruled the appellee’s objection to the testimony of Ross Coleman, which objection was made on the grounds that it was in violation of the so-called dead man’s statute, Mississippi Code Annotated section 13-1-7 (1972). Coleman’s testimony was competent because the appellee propounded interrogatories to Coleman with reference to the gift of certificate No. 1189 and by so doing made Coleman a witness and thereby waived any privilege that the estate might have had under the dead man’s statute. The appellee had the right to waive the privilege on behalf of the estate since her suit was seeking to recover assets for the benefit of the estate. Lipson v. Lipson, 183 So.2d 900, 906 (Miss.1966). Taking the deposition of, or serving interrogatories upon, a person who would otherwise be incompetent as a witness under the dead man’s statute is the equivalent of calling such a person as a witness and is a waiver of the witness’ incompetency. Lipson, su *129 pra; 81 Am.Jur.2d Witnesses § 407 (1976); citing Fant v. Fant, 173 Miss. 472, 162 So. 159 (1935).
A second principle involved in this appeal occurred when appellants attempted to call appellee as an adverse witness. The chancellor sustained an objection to this procedure on the ground that it was prohibited under the dead man’s statute. As stated above, the statute gives the right to a party to object to a person testifying if he is attempting to propound a claim either directly or indirectly against an estate. In the case before us, a will had not been presented and probated. The appellants were attempting to set aside a deed of Mrs. Moreau’s property conveying that property to appellee. Without the deed, the property would have passed to Mrs. Moreau’s estate. The appellants therefore were the ones, and the only ones, who could object to appellee testifying under the dead man’s statute. There was no administrator or executor. It follows, therefore, as night follows day, that when they attempted to call appellee as an adverse witness they waived the privilege they, and only they, had under the statute. This is borne out by the language in Coleman, supra, in discussing the waiver of the statute as to appellants by appellee when he took appellant Peterman’s deposition and forced him to answer interrogatories. The appellee, Hunter I. Peterman, otherwise could have objected to appellants’ evidence at the trial. Under the question we are now discussing the appellants could have objected to appel-lee Hunter I. Peterman getting on the stand and testifying. This was not the situation. Appellants clearly waived their right to object to the testimony of appellee and no objection by Hunter I. Peterman to his own testimony existed. Appellants had waived a right they and only they had. See McAlister v. McAlister, 183 So.2d 513 (Miss.1966); Lipson v. Lipson, 183 So.2d 900 (Miss.1966); Manning v. Hammond, 234 Miss. 299, 106 So.2d 51 (1958); Birchett v. Hundermark, 145 Miss. 683, 110 So. 237 (1926); and Whitehead v. Kirk, 104 Miss. 776, 61 So. 737 (1913). In addition to the cause having to be reversed on the waiver questions discussed above, the lower court erroneously held that a confidential and fiduciary relationship did not exist between the deceased Mrs. Moreau and appellee Hunter I. Peterman under the evidence in the record. The testimony of Mrs. Fred J. Peterman, Jr., and Dr. Angel was sufficient under our prior decisions to require that the chancellor agree with appellants that appellee’s relationship with Mrs. Moreau during the time discussed above was clearly confidential and fiduciary. Reference should be made to two recent cases from this Court; namely, Murray v. Laird, 446 So.2d 575 (1984), and Harris v. Sellers, 446 So.2d 1012, (1984). These cases discuss the prior cases of this Court, and there is no need to rehash them here. The chancellor erroneously held that the confidential and fiduciary relationship did not exist. It did exist, and under the prior cases of this court, the chancellor should have required appellee, defendant below, to assume the required burden of proof.
We therefore hold that (1) appellee Hunter I. Peterman waived the privilege he could have claimed under the dead man’s statute by making appellant Fred J. Peter-man, Jr. answer interrogatories and by making the latter submit to a deposition. (2) Appellants waived their objection to Hunter I. Peterman’s testimony by calling him as an adverse witness. They, appellants, had the privilege of this waiver and the court erroneously denied this privilege. (3) The evidence in the record, either with or without the answers of Fred J. Peter-man, Jr., to interrogatories and his deposition, and excluding any speculation as to the testimony of Hunter I. Peterman, was sufficient to establish a confidential relationship between appellee and Mrs. Mor-eau.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.